STATE OF NORTH CAROLINA v. JOSHUA CARLEN MOORE

No. 60A09

(Filed 29 January 2010)

**Criminal Law— self-defense—defense of family—instruction denied—error**

The trial court erred by not instructing on self-defense and defense of a family member in a voluntary manslaughter prosecution where the evidence, viewed in the light most favorable to defendant, showed that the 64-year-old defendant was operating a produce stand with his wife and his grandson; the victim approached the stand and attempted to wrestle the cash box from defendant's wife, who feared for her safety; defendant ordered the victim to "back off" and he did so; the victim then put his hand in his pocket and approached the family, pulling his hand from his pocket; and defendant shot the victim one time.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 194 N.C. App. ——, 671 S.E.2d 545 (2009), finding no error in a judgment entered 17 October 2007 by Judge Frank R. Brown in Superior Court, Edgecombe County, following a jury verdict finding defendant guilty of voluntary manslaughter. Heard in the Supreme Court 17 November 2009.

*Roy Cooper, Attorney General, by Jane Ammons Gilchrist, Assistant Attorney General, for the State.*

*Thomas & Farris, PA, by Albert S. Thomas, Jr.; and Newton, & Lee, by Eldon S. Newton, III, for defendant-appellant.*

STATE v. MOORE

[363 N.C. 793 (2010)]

BRADY, Justice.

The sole issue before this Court is whether the trial court erred in denying defendant's requested instructions on self-defense and defense of a family member, instead instructing jurors that they were not to consider these defenses in their deliberations. We hold that the evidence, when viewed in the light most favorable to defendant, was sufficient to require the trial court to instruct the jury on the law of self-defense and defense of a family member. Accordingly, we reverse the decision of the Court of Appeals and remand to that court for further remand to the trial court for a new trial.

## BACKGROUND

The State's evidence and defendant's evidence in this case varied in important respects. However, it was undisputed that on 8 July 2006, defendant Joshua Carlen Moore was sixty-four years old and working with his wife, Carol Moore, and his grandson at their produce stand in Rocky Mount. The couple's cash box was bolted to a folding table that was located behind the truck that contained much of the produce for sale. Sometime that morning, Emanuel Harris approached the couple's produce stand, walked over to the meat container, and began comparing different pieces of meat, stating he was attempting to find a piece suitable for his mother. Soon after that, a struggle erupted between Mrs. Moore and Harris when Harris attempted to steal the cash box and its contents. Charise Wilkins testified on behalf of the State that she was at the table at the time of the "tussle" and observed Harris attempt to take the cash box. She testified that she "want[ed] to say" that Harris still had his hands on the cash box when defendant jumped from the back of the truck and shot Harris once in the chest, killing him. State's witness Jasper Lindsey testified that he was present during the altercation, that Harris made "a gesture to swing to make [Mrs. Moore's] arms get out of the way," and that Harris's hands were on the cash box when he was shot. Harris was unarmed at the time of the altercation.

Defendant presented evidence, through testimony of his wife and himself, that he had been a farmer for years, that he and his wife had been married for fifty years, and that they had operated the produce stand in the same location for twenty-five years. Defendant presented numerous character witnesses, all testifying to defendant's excellent reputation for truthfulness and peacefulness. Defendant's character witnesses basically described him as a good, salt-of-the-earth type individual.

Defendant's and Mrs. Moore's testimony about the altercation differed from the testimony of the State's witnesses. Mrs. Moore testified that Harris made her nervous from the time he started asking questions at the stand, that he tried to look in the cash box every time she opened it, and that Harris was wearing a long black t-shirt and baggy pants. Moreover, she testified that during the altercation she was "frightened" and "praying" that she would not "get hurt"; that Harris became more aggressive as the attempted robbery progressed, even to the point that he picked the table up off the ground; and that she was worried she might have a heart attack because she has heart palpitations. According to Mrs. Moore, when Harris reached for the cash box and began the struggle, she shouted for her husband, who rushed to her aid and shouted for Harris to "back off." Harris did back away, but then came back toward Mrs. Moore with his left hand in his pocket. Defendant then shot him. Immediately following the shooting, defendant placed his Taurus .38 special caliber revolver in the back of the truck and went to a nearby business to call for medical assistance for Harris.

Defendant's testimony related the same facts as Mrs. Moore's testimony. Defendant stated that after "backing off," Harris put his left hand in his pocket and began to come slowly toward Mrs. Moore once again, while pulling his hand back out of his pocket. Before Harris's hand reached the top of his pocket, defendant shot him. Defendant stated that he "wasn't going to wait to see no gun." He also testified that he feared for his safety, his grandson's safety, and his wife's safety.

Defendant properly requested in writing that the trial court instruct the jury on self-defense and defense of a family member. The trial court denied those requested instructions and instead instructed the jury that the law of self-defense did not apply to the case. During closing arguments, the trial court admonished defense counsel in front of the jury for mentioning self-defense in his argument and immediately instructed jurors that they were not to consider any argument or evidence of self-defense or defense of a family member in their deliberations. The trial court then instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter. Following deliberations, the jury returned a verdict of guilty of voluntary manslaughter. The Court of Appeals, in a divided opinion, found no error, with the dissenting judge voting for a new trial. *State v. Moore*, —— N.C. App. ——, ——, 671 S.E.2d 545, 550 (2009). Defendant appealed as of right to this Court.

## ANALYSIS

This Court long ago explained that "[t]he first law of nature is that of self-defense." *State v. Holland*, 193 N.C. 713, 718, 138 S.E. 8, 10 (1927). The concept of self-defense emerged in the law as a recognition of a "primary impulse" that is an "inherent right" of all human beings. *Id.* Thus, an accused is not guilty of a crime when he shows the existence of perfect self-defense. *State v. Bush*, 307 N.C. 152, 158, 297 S.E.2d 563, 568 (1982).

> [B]efore the defendant is entitled to an instruction on self-defense, two questions must be answered in the affirmative: (1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and (2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

*Id.* at 160-61, 297 S.E.2d at 569. In determining whether an instruction on perfect self-defense must be given, the evidence is to be viewed in the light most favorable to the defendant. *State v. Watkins*, 283 N.C. 504, 509, 196 S.E.2d 750, 754 (1973) (citing *State v. Finch*, 177 N.C. 599, 99 S.E. 409 (1919)). Thus, if the defendant's evidence, taken as true, is sufficient to support an instruction for self-defense, it must be given even though the State's evidence is contradictory. *Id.* (citing, *inter alia*, *State v. Hipp*, 245 N.C. 205, 95 S.E.2d 452 (1956)).

If defendant's evidence is sufficient as to the questions set out in *Bush*, the jury should be instructed to determine the existence of perfect self-defense.

> The law of perfect self-defense excuses a killing altogether if, at the time of the killing, these four elements existed:
>
> > (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> > (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Blue*, 356 N.C. 79, 88 n.1, 565 S.E.2d 133, 139 n.1 (2002) (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981)). The jury may return a verdict of guilty only if it finds that the State proved beyond a reasonable doubt that defendant did not act in self-defense. *See State v. Laws*, 345 N.C. 585, 595, 481 S.E.2d 641, 646 (1997).

The law related to defense of another or a family member is substantially similar. *See State v. Perry*, 338 N.C. 457, 466, 450 S.E.2d 471, 476 (1994).

In general one may kill in defense of another if one believes it to be necessary to prevent death or great bodily harm to the other "and has a reasonable ground for such belief, the reasonableness of this belief or apprehension to be judged by the jury in light of the facts and circumstances as they appeared to the defender at the time of the killing."

*Id.* (quoting *State v. Terry*, 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994)).

Viewed in the light most favorable to defendant, without considering any of the State's evidence to the contrary, the evidence shows that defendant was present at his produce stand, a place where he had a lawful right to be; that Harris was a sixteen-year-old male who was approximately six feet tall and weighed one-hundred-eighty pounds; that Harris engaged in a physical altercation with Mrs. Moore as he attempted to rob her of her cash box; that Harris grew more aggressive as the "tussle" continued and struck at Mrs. Moore; that Harris so violently pulled at the cash box that, as Mrs. Moore was pushing down, he was still able to lift the table off the ground; that Mrs. Moore fearfully cried out for her husband; that she was "scared to death"; that defendant ordered Harris to "back off"; that Harris did so, but placed his hand in his left pocket, and as he again approached the Moores, began to pull his hand from his pocket; and that defend-

ant shot Harris one time because he feared for the safety of his wife, his grandson, and himself.

It is significant that this evidence is not derived solely from defendant's own testimony, but is corroborated by other testimony and evidence received at trial. Thus, defendant's evidence is sufficient to show that he believed that it was necessary to use force to prevent death or great bodily injury to himself or a family member. Additionally, we cannot say that the facts, when taken in the light most favorable to defendant, evince an unreasonable belief to that effect. Following a protracted and violent struggle for the cash box that attracted the attention of multiple witnesses, defendant could have reasonably believed that Harris was armed and was indeed going to pull a weapon out of his left pocket. Simply put, the evidence was sufficient to require the trial court to instruct the jury on self-defense and defense of a family member.

## CONCLUSION

Because defendant was entitled to jury instructions on self-defense and defense of a family member, we reverse the decision of the Court of Appeals and remand this case to that court with instructions to vacate defendant's conviction for voluntary manslaughter and to further remand this case to the trial court for a new trial.

REVERSED AND REMANDED; NEW TRIAL.