IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-243

 Filed: 20 November 2018

Buncombe County, Nos. 15 CRS 090856, 16 CRS 000148-49

STATE OF NORTH CAROLINA

 v.

KELVIN OYAKHILOME IRABOR

 Appeal by defendant from judgments entered 2 February 2017 by Judge Robert

T. Sumner in Buncombe County Superior Court. Heard in the Court of Appeals 3

October 2018.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General James
 M. Stanley, Jr., for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel
 Shatz, for defendant-appellant.

 CALABRIA, Judge.

 Kelvin Oyakhilome Irabor (“defendant”) appeals from a judgment entered

upon a jury’s verdict finding him guilty of second-degree murder, assault with a

deadly weapon, and discharging a firearm into an occupied dwelling. After careful

review, we conclude that the trial court committed prejudicial error by failing to

include the relevant no duty to retreat and stand-your-ground provisions from its jury

instructions on self-defense. Therefore, we reverse the trial court’s judgment and

remand for a new trial.

 I. Factual and Procedural Background
 STATE V. IRABOR

 Opinion of the Court

 In October 2015, defendant lived in apartment 14E in the Oak Knoll apartment

complex in Asheville, along with his child, London, London’s mother, Denise Williams

(“Williams”), and Williams’s sister, Shamica Robinson (“Robinson”). Sometimes

Dondre Nelson (“Nelson”), who was a friend of one of Robinson’s other sisters, stayed

with them in apartment 14E.

 Defendant testified that he had known Nelson for some time and had

befriended Nelson to avoid becoming a “target.” According to defendant, Nelson was

a high-ranking member of the Blood gang, which was highly active in the Oak Knoll

area, and had frequently robbed individuals around the Oak Knoll apartments.

Nelson had gained this status by killing a rival gang member in Atlanta, Georgia.

Defendant also testified that he knew Nelson always carried a gun on his person, and

Nelson had informed defendant that he had shot an individual for allegedly

discharging a weapon into the Oak Knoll apartments. Since defendant knew Nelson’s

reputation, he had hoped his friendship with Nelson would ensure that he did not

become a target of gang activity.

 On 9 October 2015, defendant rode with Nelson to an ABC store, where they

met Jenna Ray (“Ray”), with whom Nelson apparently had a relationship. After

defendant and Nelson returned to Oak Knoll, Ray also arrived. Williams was angry

when she saw Ray and was prepared to attack her. When defendant stopped her

from attacking Ray, Williams became angry with defendant. Williams’s niece, Gelisa

 -2-
 STATE V. IRABOR

 Opinion of the Court

Madden (“Madden”), attempted to intervene, striking defendant, who struck her

back.

 While defending himself from Madden, defendant released Williams, who went

into apartment 14E and returned with a broomstick, with which she struck

defendant. Defendant responded by drawing a firearm and chasing Williams. While

chasing her, he fired three shots. Williams fled into apartment 14E, and a neighbor

called Nelson. One of defendant’s shots allegedly struck the door of apartment 14E,

where Nelson’s daughter was staying at the time.

 After chasing Williams, defendant left Oak Knoll for several hours. He called

multiple people asking for a ride and eventually reached Nelson. Nelson was furious

and refused to give him a ride. Defendant decided to walk back to Oak Knoll instead.

When defendant returned to Oak Knoll, he saw Nelson and two others standing

outside apartment 14E. Fearing what Nelson might do to him, defendant went to

another apartment first, where he talked with Jerome Smith (“Smith”). Smith told

defendant that Nelson was upset with defendant for firing a shot into apartment 14E,

where Nelson’s daughter was staying, and warned defendant to be careful.

Defendant borrowed Smith’s gun for protection.

 After defendant left Smith’s apartment, he walked along the sidewalk, heading

back to apartment 14E. As defendant approached the apartment, Nelson called out

to defendant and accused him of shooting at Nelson’s daughter, which defendant

 -3-
 STATE V. IRABOR

 Opinion of the Court

denied. Nelson responded by telling defendant “this is war, empty your pocket,” while

advancing towards defendant. Fearing Nelson would attack and rob him, defendant

pulled the gun out of his pocket, “racked it,” and told Nelson to back up. Nelson

continued to advance, and defendant fired two warning shots into the ground;

however, Nelson remained undeterred. Nelson then lunged at defendant, and

defendant fatally shot Nelson. Defendant then fled, dropping Smith’s gun into the

bushes.

 Defendant was indicted for the first-degree murder of Nelson, assault on a

female of Madden, assault with a deadly weapon with intent to kill of Williams, and

discharging a firearm into an occupied dwelling. Trial commenced during the 23

January 2017 session of Buncombe County Superior Court. Following the State’s

presentation of evidence, defendant presented evidence, including his own testimony.

 At the charge conference, the trial court agreed to deliver N.C.P.I.–Crim.

206.10, the pattern jury instruction on first-degree murder and lesser-included

offenses. This instruction includes instructions on self-defense and a “no duty to

retreat” provision as part of the explanation of self-defense. See N.C.P.I.–Crim.

206.10 (June 2014) (providing that a “defendant has no duty to retreat in a place

where the defendant has a lawful right to be”). N.C.P.I.–Crim. 206.10 also

incorporates by reference a “stand-your-ground” provision found in N.C.P.I.–Crim.

308.10. See id. 308.10 (June 2017) (providing that “[i]f the defendant was not the

 -4-
 STATE V. IRABOR

 Opinion of the Court

aggressor and the defendant was . . . [at a place the defendant had a lawful right to

be], the defendant could stand the defendant’s ground and repel force with force”)

(second set of brackets in original).

 Although the trial court agreed to instruct the jury on self-defense according

to N.C.P.I.–Crim. 206.10, it ultimately omitted the “no duty to retreat” language from

its actual instructions without prior notice to the parties and failed to give any part

of the “stand-your-ground” instruction. Defense counsel failed to object to the

instructions as given.

 The jury returned verdicts finding defendant guilty of second-degree murder,

assault with a deadly weapon, and discharging a firearm into an occupied dwelling,

and not guilty of assault on a female. The trial court sentenced defendant to a

minimum of 200 and a maximum of 252 months for second-degree murder, and a

minimum of 55 and a maximum of 78 months for discharging a firearm and assault,

to be served consecutively in the custody of the North Carolina Division of Adult

Correction.

 Defendant appeals.

 II. Self-Defense Instruction

 Defendant contends the trial court erroneously omitted the relevant no duty to

retreat and stand-your-ground provisions from the jury instructions on self-defense,

which constituted reversible error. We agree.

 -5-
 STATE V. IRABOR

 Opinion of the Court

 A. Standard of Review

 “It is the duty of the trial court to instruct the jury on all substantial features

of a case raised by the evidence.” State v. Shaw, 322 N.C. 797, 803, 370 S.E.2d 546,

549 (1988) (citation omitted). “A defendant is entitled to a jury instruction on self-

defense when there is evidence from which the jury could infer that he acted in self-

defense.” State v. Allred, 129 N.C. App. 232, 235, 498 S.E.2d 204, 206 (1998) (citation

omitted). “In determining whether an instruction on . . . self-defense must be given,

the evidence is to be viewed in the light most favorable to the defendant.” State v.

Moore, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010) (citation omitted). Whether the

trial court erred in instructing the jury is a question of law, reviewed de novo. State

v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

 B. Analysis

 Self-defense is an affirmative defense, whereby “the defendant says, ‘I did the

act charged in the indictment, but I should not be found guilty of the crime charged

because * * * .’ ” State v. Caddell, 287 N.C. 266, 289, 215 S.E.2d 348, 363 (1975). Our

amended “statutes provide two circumstances in which individuals are justified in

using deadly force, thus excusing them from criminal culpability.” State v. Lee, 370

N.C. 671, 674, 811 S.E.2d 563, 566 (2018). N.C. Gen. Stat. § 14-51.3(a) states, in

relevant part:

 A person is justified in using force, except deadly force, against
 another when and to the extent that the person reasonably

 -6-
 STATE V. IRABOR

 Opinion of the Court

 believes that the conduct is necessary to defend himself or herself
 or another against the other’s imminent use of unlawful force.
 However, a person is justified in the use of deadly force and does
 not have a duty to retreat in any place he or she has the lawful
 right to be if . . . the following applies:

 (1) He or she reasonably believes that such force is necessary to
 prevent imminent death or great bodily harm to himself or herself
 or another.

N.C. Gen. Stat. § 14-51.3(a) (2017) (emphasis added).

 On appeal, the State contends that defendant was not entitled to an instruction

on self-defense for several reasons. First, the State asserts defendant failed to

present sufficient evidence to support defendant’s actual and reasonable belief that

shooting Nelson was necessary to protect himself from imminent death or great bodily

harm. Second, the State argues since defendant was the initial aggressor, he lost the

protections of the self-defense statute. Therefore, according to the State, the trial

court was not required to instruct the jury on self-defense and any error in the self-

defense instruction was harmless. We disagree.

 Viewed in the light most favorable to defendant, the evidence supports a jury

instruction on self-defense, and the trial court agreed to give it. Defendant was fully

aware of Nelson’s violent and dangerous propensities on the night of the shooting.

According to defendant’s testimony, Nelson had achieved his high-ranking

membership in the Blood gang by killing a rival gang member. In addition, Nelson

stated that he shot an individual who he believed had shot into the Oak Knoll

 -7-
 STATE V. IRABOR

 Opinion of the Court

apartments. Furthermore, defendant observed Nelson robbing individuals in the

apartments on multiple occasions and testified that, to his knowledge, Nelson always

carried a gun with him.

 Defendant’s knowledge of Nelson’s violent propensities, being armed, and prior

acts supports the trial court’s finding that defendant reasonably believed it was

necessary to use deadly force to save himself from death or great bodily harm. See

State v. Strickland, 346 N.C. 443, 459, 448 S.E.2d 194, 203 (1997) (“[E]vidence of prior

violent acts by the victim or of the victim’s reputation for violence may . . . prove that

a defendant had a reasonable apprehension of fear of the victim.” (citation omitted));

see also N.C. Gen. Stat. § 14-51.3(a).

 Prior to the shooting, defendant offered evidence that Nelson stood outside

Apartment 14E, where defendant lived, with two other individuals and was waiting

to confront defendant about allegedly shooting a gun towards Nelson’s daughter.

Defendant also testified he borrowed a gun from Smith for protection. When Nelson

noticed defendant walking towards his apartment, Nelson told defendant “this is war,

empty your pocket”; continued to advance upon defendant after defendant fired two

warning shots; and eventually lunged at defendant while reaching behind his back

towards his waistband.

 By viewing the evidence in the light most favorable to defendant, a jury could

conclude that defendant actually and reasonably believed that Nelson was about to

 -8-
 STATE V. IRABOR

 Opinion of the Court

shoot him and that it was necessary for defendant to use deadly force to protect

himself. The fact that defendant armed himself and did not affirmatively avoid the

altercation does not make defendant the initial aggressor. See State v. Vaughn, 227

N.C. App. 198, 204, 742 S.E.2d 276, 279-80 (2013). Further, defendant’s earlier

conduct towards Williams does not make him an aggressor against Nelson.

 When law enforcement officers searched Nelson’s body, they did not find a gun.

However, evidence presented at trial, when viewed in the light most favorable to

defendant, suggested that Nelson may have been armed. Law enforcement officers

testified that neither Nelson’s wallet or cell phone were found on his person. Yet,

Nelson had used his cell phone earlier that evening, and a receipt from Walmart was

found in Nelson’s pocket. Witnesses also reported seeing an unidentified female

fleeing the area that night with a gun.

 From this evidence, a jury could reasonably infer that defendant reasonably

believed Nelson was armed at the time of the altercation. Therefore, defendant was

still entitled to protect himself if he reasonably believed Nelson was armed and

intended to inflict death or serious bodily injury on defendant. See State v. Spaulding,

298 N.C. 149, 157, 257 S.E.2d 391, 396 (1979) (noting that “an action by the victim as

if to reach for a weapon was sufficient to justify an instruction on self-defense”

(citation omitted)).

 -9-
 STATE V. IRABOR

 Opinion of the Court

 The State further contends that defendant’s testimony was inconsistent and,

thus, insufficient. However, “if the defendant’s evidence, taken as true, is sufficient

to support an instruction for self-defense, it must be given even though the State’s

evidence is contradictory.” Moore, 363 N.C. at 796, 688 S.E.2d at 449 (emphasis

added) (citation omitted); see also State v. Dooley, 285 N.C. 158, 163, 203 S.E.2d 815,

818 (1974) (“Where there is evidence that defendant acted in self-defense, the court

must charge on this aspect even though there is contradictory evidence by the State

or [there are] discrepancies in defendant’s evidence.” (citations omitted)). Because

the evidence, when viewed in the light most favorable to defendant, supports an

instruction on self-defense, the trial court correctly gave the self-defense instruction

under N.C.P.I.–Crim. 206.10. See Allred, 129 N.C. App. at 235, 498 S.E.2d at 206.

 However, the trial court erred by failing to include the relevant no duty to

retreat and stand-your-ground provisions after agreeing to provide the instructions.

We initially note that this issue is preserved for appellate review. See Lee, 370 N.C.

at 676, 811 S.E.2d at 567 (“When a trial court agrees to give a requested pattern

instruction, an erroneous deviation from that instruction is preserved for appellate

review without further request or objection.”). Here, the trial court agreed to give the

pattern jury instruction under N.C.P.I.–Crim. 206.10, which includes the relevant no

duty to retreat and stand-your-ground provisions; however, the trial court failed to

 - 10 -
 STATE V. IRABOR

 Opinion of the Court

include these provisions in its charge to the jury. Therefore, pursuant to Lee, this

issue is preserved. See id.

 Our Supreme Court recently affirmed that “a defendant entitled to any self-

defense instruction is entitled to a complete self-defense instruction, which includes

the relevant stand-your-ground provision.” State v. Bass, ___ N.C. ___, ___, ___ S.E.2d

___, ___ (Oct. 26, 2018) (No. 208A17) (emphasis in original). Failure to include the

relevant stand-your-ground provision constitutes prejudicial error and warrants a

new trial. Lee, 370 N.C. at 671-72, 811 S.E.2d at 564 (holding the omission of the

stand-your-ground provision amounted to an “inaccurate and misleading statement

of the law[,]” requiring a new trial). Defendant is entitled to a new trial with proper

jury instructions.

 III. Conclusion

 The trial court committed prejudicial error by failing to include the relevant no

duty to retreat and stand-your-ground provisions in the agreed-upon jury

instructions on self-defense. Therefore, we reverse the judgment of the trial court

and remand for a new trial. See id. Because we have reversed and remanded for a

new trial, we need not address defendant’s remaining arguments on appeal.

 NEW TRIAL.

 Judges TYSON and ZACHARY concur.

 - 11 -