IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-234

 Filed: 18 December 2018

Guilford County, Nos. 16 CRS 77832-33

STATE OF NORTH CAROLINA

 v.

JOHN THOMAS COLEY

 Appeal by defendant from judgments entered 25 September 2017 by Judge

Richard S. Gottlieb in Guilford County Superior Court. Heard in the Court of Appeals

3 October 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Michael T.
 Henry, for the State.

 Kimberly P. Hoppin for defendant-appellant.

 TYSON, Judge.

 John Thomas Coley (“Defendant”) appeals from his convictions of assault with

a deadly weapon inflicting serious injury and possession of a firearm by a felon.

Defendant argues on appeal that the trial court erred by declining to instruct the jury

on self-defense and defense of habitation. We reverse Defendant’s convictions, vacate

the judgment, and grant him a new trial.

 I. Background
 STATE V. COLEY

 Opinion of the Court

 On the evening of 7 June 2016, Defendant was sitting outside of his neighbor’s

house with friends. At the time, Defendant was recovering from a broken leg and

was using crutches and a wheelchair. Derrick Garris, who “stayed at [Defendant’s]

house off and on,” approached Defendant at the neighbor’s house and punched

Defendant, causing him to fall out of his chair. Defendant got up and began walking

home on crutches. When Defendant arrived home, Garris grabbed Defendant and

threw him up against the door. After Defendant opened the door, Garris grabbed

Defendant and threw him over two chairs. Defendant bounced off the chairs and

landed on the floor. Garris then grabbed and threw Defendant into a recliner. Garris

repeatedly called Defendant “12,” which is slang for a narcotics officer or law

enforcement agent, and accused Defendant of “snitch[ing] on [his] brothers” and

getting them “locked up” for trafficking guns. Defendant denied Garris’ accusations.

 Garris left, but quickly returned with a friend, Djimon Lucas, allegedly to

retrieve his clothes. As Defendant attempted to explain the earlier events to Lucas,

Garris punched Defendant a couple more times and then left again. Defendant

testified that by the time he had climbed from the floor into his wheelchair, he saw

Garris once more entering the house. As Garris entered, Defendant reached down

beside his wheelchair, retrieved a gun, and shot at Garris. Conversely, Garris

testified that he was standing in the street in front of the house when the gunshot hit

him and that he fled the scene seeking medical assistance.

 -2-
 STATE V. COLEY

 Opinion of the Court

 On 12 December 2016, the Guilford County Grand Jury indicted Defendant for

attempted first-degree murder, assault with a deadly weapon with intent to kill

inflicting serious injury, and possession of a firearm by a felon. During the charge

conference at trial, the court denied Defendant’s request for jury instructions on self-

defense and defense of habitation. Defendant objected and preserved the issue for

appeal.

 The jury found Defendant not guilty of attempted first-degree murder and

assault with a deadly weapon with intent to kill inflicting serious injury. The jury

found Defendant guilty of assault with a deadly weapon inflicting serious injury, a

lesser-included offense without intent to kill, and possession of a firearm by a felon.

The trial court sentenced Defendant to twenty-six to forty-four months’ imprisonment

for assault with a deadly weapon inflicting serious injury, together with a consecutive

term of thirteen to twenty-five months for possession of a firearm by a felon.

Defendant gave oral notice of appeal in court.

 II. Jurisdiction

 An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)

and 15A-1444 (2017).

 III. Standard of Review

 A defendant is entitled to a self-defense instruction when “competent evidence

of self-defense is presented at trial.” State v. Morgan, 315 N.C. 626, 643, 340 S.E.2d

 -3-
 STATE V. COLEY

 Opinion of the Court

84, 95 (1986) (emphasis omitted). Defendant’s evidence, taken as true, is sufficient

to support the instruction, even if contradictory evidence exists. State v. Moore, 363

N.C. 793, 796, 688 S.E.2d 447, 449 (2010). “[T]he evidence is to be viewed in the light

most favorable to the defendant.” Id. (citation omitted). “[A] defendant entitled to any

self-defense instruction is entitled to a complete self-defense instruction, which

includes the relevant stand-your-ground provision.” State v. Bass, __ N.C. __, __, 819

S.E.2d 322, 326 (2018).

 Determining whether a trial court erred in instructing the jury is a question of

law reviewed de novo. State v. Voltz, ___ N.C. App. ___, ___ 804 S.E.2d 760, 765 (2017).

“Under a de novo review, the court considers the matter anew and freely substitutes

its own judgment for that of the lower tribunal.” State v. Williams, 362 N.C. 628, 632-

33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

 IV. Self-Defense

 Defendant argues the trial court erred by failing to instruct the jury on self-

defense. We agree.

 The trial judge must instruct the jury on the law applicable to the substantive

features of the case arising from the evidence and apply the law to the facts of the

case. State v. Covington, 317 N.C. 127, 131, 343 S.E.2d 524, 527 (1986). Self-defense

is a substantial and essential feature of a case; thus, a defendant who presents

competent evidence of self-defense at trial is entitled to a jury instruction on this

 -4-
 STATE V. COLEY

 Opinion of the Court

defense. Morgan, 315 N.C. at 643, 340 S.E.2d at 95. The evidence is viewed in the

light most favorable to the defendant, and if the evidence taken as true is sufficient

to support a self-defense instruction, it must be given, even if the State presents

contradictory evidence. Moore, 363 N.C. at 796, 688 S.E.2d at 449.

 In North Carolina, the right to use deadly force to defend oneself is provided

both by statute and case law. Under statute,

 (a) A person is justified in using force, except deadly force,
 against another when and to the extent that the person
 reasonably believes that the conduct is necessary to defend
 himself or herself or another against the other’s imminent
 use of unlawful force. However, a person is justified in the
 use of deadly force and does not have a duty to retreat in
 any place he or she has the lawful right to be if either of the
 following applies:

 (1) He or she reasonably believes that such force is
 necessary to prevent imminent death or great bodily
 harm to himself or herself or another.

 (2) Under the circumstances permitted pursuant to
 G.S. 14-51.2.

N.C. Gen. Stat. § 14-51.3(a) (2017) (emphasis supplied).

 The State’s cross-examination of Defendant focused upon whether or not

Defendant had intended to kill Garris when Defendant shot at him. However, intent

to kill is not necessary for an instruction on self-defense, only that the defendant

intentionally used deadly force to defend himself without retreating from a place

where he had a lawful right to be. State v. Richardson, 341 N.C. 585, 594, 461 S.E.2d

724, 730 (1995) (“self-defense involves an admitted, intentional act”); see also State v.

 -5-
 STATE V. COLEY

 Opinion of the Court

Ayers, __ N.C. App. __, __, 819 S.E.2d 407, 412 (“Defendant intended to ‘strike the

blow’ . . . even if he did not intend to kill”), stay allowed, __ N.C. __, 817 S.E.2d 735

(2018).

 An instruction on self-defense is not appropriate where a defendant testifies

he did not intend to hit anyone when he fired his weapon. State v. Cook, __ N.C. App.

__, __, 802 S.E.2d 575, 577 (2017), aff’d per curiam, 370 N.C. 506, 809 S.E.2d 566

(2018) (“a defendant who fires a gun in the face of a perceived attack is not entitled

to a self-defense instruction if he testifies that he did not intend to shoot the attacker

when he fired the gun”).

 Defendant’s statement of the shot being a “warning shot” came only as a

response to the prosecutor’s question on whether Defendant had “intend[ed] to kill”

Garris. Taken as a whole, Defendant’s testimony supports his argument that he had

shot at Garris, and intended to do so:

 [Prosecutor:] Did you shoot [Garris]?

 [Defendant:] Yes, I did.

 [Prosecutor:] Did you intend to kill [Garris]?

 [Defendant:] No, I didn’t.

 [Prosecutor:] When you shot [Garris] and, be clear, you did
 not intend to kill [Garris]?

 [Defendant:] No, sir. My intentions was to warn him off so
 he wouldn’t hurt me again.

 -6-
 STATE V. COLEY

 Opinion of the Court

 [Prosecutor:] So, you were shooting a warning shot?

 [Defendant:] Yes, sir.

 [Prosecutor:] So, isn’t a warning shot when you shoot in the
 air?

 [Defendant:] Sometimes people shoot warning shots in the
 air, sometimes people shoot them at the door, sometimes
 people shoot warning shots at people’s feet. I mean, there’s
 several places you can shoot a warning shot.

 [Prosecutor:] But it’s your testimony that your intentions
 were not to kill [Garris]?

 [Defendant:] And that is correct. That’s why there was only
 one shot fired.

 [Prosecutor:] So, why would you use deadly force if it was
 not your intention to kill [Garris]?

 [Defendant:] Because that was the only means of protection
 that I could use. I had nothing else.

(Emphasis supplied).

 The prosecutor introduced the idea of a warning shot, and tried to assert a

warning shot would occur when a person “shoot[s] in the air.” Our precedents hold

this action would not be entitled to a self-defense instruction. State v. Williams, 342

N.C. 869, 873, 467 S.E.2d 392, 394 (1996) (instruction on self-defense is not

appropriate where “the defendant testified that he fired his pistol three times into

the air to scare [the victim] and the others and make them retreat so he could leave

the area”).

 -7-
 STATE V. COLEY

 Opinion of the Court

 Defendant’s testimony asserts he only fired one shot at Garris because he did

not intend to kill him, but was using “the only means of protection” he had to defend

himself against Garris’ repeated attacks. If Defendant had intended to simply warn

Garris and then cause further injury to defend himself, he would have fired more

than one shot. See id. at 874, 467 S.E.2d at 394-95 (where defendant fired three

warning shots, and the third one struck the victim in the back, “it is entirely

unreasonable to believe” a person would have thought the use of deadly force was

necessary to protect himself from a fleeing assailant).

 In Williams, our Supreme Court concluded “a reasonable person believing that

the use of deadly force was necessary to save his or her life would have pointed the

pistol at the perceived threat and fired at the perceived threat.” Id. Such a belief

must be “objectively reasonable.” Id. In the light most favorable to him, Defendant’s

testimony and cross-examination, including the testimony above, indicates he had a

reasonable belief Garris would continue to severely injure him or even kill him.

Defendant shot at Garris to “strike the blow” as a way to prevent further assault or

death.

 During direct examination, Defendant had testified to his fear of Garris.

Garris had implied Defendant was a “snitch” and, as Defendant stated:

 [Defendant:] Normally in the streets a snitch get beat up.
 They jump -- they jump on snitches.

 -8-
 STATE V. COLEY

 Opinion of the Court

 [Defense Counsel:] Okay. When you say beat up, is -- is that
 the extent of it?

 [Defendant:] I mean, it could go from being killed, beaten
 with bats. I mean, it’s – there’s no limit to what could
 happen to you.

 ...

 [Defense Counsel:] You said you had a feeling he was going
 to come back. Why -- why did you have that feeling?

 [Defendant:] Because he had already jumped on me so
 many times, I mean, he -- he, as they seen, as the jury seen,
 he’s a pretty big dude. He had jumped on me so many
 times, I took him as being a aggressive individual.

 [Defense Counsel:] Did you -- did you have any -- what --
 what did you think he was going to do if he came back?

 [Defendant:] He was going to jump on me again or possibly
 even kill me. I, you know, I had no understanding of what
 he might have did.

 ...

 [Defendant:] Well, again, like I said, he had attacked me so
 many times, my statement he was going to jump on me as
 if he was going to punch me in my face or maybe even try
 to hurt, harm, or endanger me physically. Like I never
 knew what he left to go get, as if he might have -- he could
 have went and got another weapon, I don’t know.

 Defendant’s testimony of his fear of Garris, his uncertainty of whether Garris

was armed, and his need to protect himself continued during cross-examination.

 [Prosecutor:] Okay. And you – [Garris] did not have a gun
 in his hand when he walked in the door, did he?

 -9-
 STATE V. COLEY

 Opinion of the Court

[Defendant:] No, he didn’t, but I don’t know what he had.
He could have possessed a knife, a bat, anything.

[Prosecutor:] He could have, but you didn’t see any of that
in his hand, did you?

[Defendant:] I don’t know what he possessed.

[Prosecutor:] I’m just asking what you saw.

[Defendant:] At the time, no, I wasn’t looking to see what
he had. I was only worried about getting hurt.

[Prosecutor:] So, the answer to my question is you did not
see a weapon in [Garris’] hand?

[Defendant:] At the time I didn’t -- I wasn’t looking. I was
more focused on not getting hurt.

...

[Prosecutor:] How would you describe the force that you
used?

[Defendant:] As protective.

[Prosecutor:] Did you think that the shot that you gave
[Garris] was something that he could die from?

[Defendant:] No, I didn’t.

[Prosecutor:] So, you didn’t think that shooting a person in
vital areas of their body they would die from that?

[Defendant:] I didn’t feel it was a vital area.

...

[Prosecutor:] So, you thought the appropriate response was
to shoot him?

 - 10 -
 STATE V. COLEY

 Opinion of the Court

 [Defendant:] Once he came back in, I felt like he was going
 to attack me another time, yes, sir.

(Emphasis supplied).

 Viewing Defendant’s testimony as true, competent evidence was presented

from which a jury could reasonably infer Defendant intended to “strike the blow”

when he aimed at Garris and shot his gun in self-defense. Ayers, __, N.C. App. at __,

819 S.E.2d at 412; cf. Williams, 342 N.C. at 873, 467 S.E.2d at 394.

 Viewed in the light most favorable to him, ample testimony was presented

showing Defendant had an objectively reasonable belief he needed to use deadly force

to repel another physical attack to his person by Garris. Cf. Williams, 342 N.C. at

873, 467 S.E.2d at 394. Because of the previous assaults by Garris, Defendant, who

required the use of a wheelchair or crutches to maneuver and ambulate as a result of

his injuries, was reasonably afraid of further injury or even death. Defendant did not

know whether or not Garris had retrieved a weapon before Garris returned, after

multiple prior assaults, and came back into Defendant’s home for a final time. “From

this evidence, a jury could reasonably infer that [D]efendant reasonably believed

[Garris] was armed at the time of the altercation.” State v. Irabor, __ N.C. __, __,

__S.E.2d __, __, 2018 WL 6051600, at *4 (2018).

 The State’s argument focuses on a very brief portion of Defendant’s responses

to the prosecutor’s questions, that he fired a “warning shot,” but neglects to review in

the light most favorable to Defendant his testimony to support a jury instruction for

 - 11 -
 STATE V. COLEY

 Opinion of the Court

self-defense. Even though contradictory evidence exists, sufficient evidence was

presented to provide an instruction on self-defense to the jury. Moore, 363 N.C. at

796, 688 S.E.2d at 449; see also Irabor, 2018 WL 6051600, at *4.

 V. Defense of Habitation

 Our statutes provide that a lawful occupant of a home “is presumed to have

held a reasonable fear of imminent death or serious bodily harm to himself or herself

or another when using defensive force that is intended or likely to cause death or

serious bodily harm to another” if:

 (1) The person against whom the defensive force was used
 was in the process of unlawfully and forcefully entering, or
 had unlawfully and forcibly entered, a home, motor vehicle,
 or workplace, or if that person had removed or was
 attempting to remove another against that person’s will
 from the home, motor vehicle, or workplace.

 (2) The person who uses defensive force knew or had reason
 to believe that an unlawful and forcible entry or unlawful
 and forcible act was occurring or had occurred.

N.C. Gen. Stat. § 14-51.2(b) (2017). Further, any “person who unlawfully and by force

enters or attempts to enter a person’s home . . . is presumed to be doing so with the

intent to commit an unlawful act involving force or violence.” N.C. Gen. Stat. § 14-

51.2(d).

 Defendant was inside his home when Garris crossed over the door’s threshold,

according to Defendant’s testimony. Garris had repeatedly assaulted Defendant

previously that evening, including throwing Defendant into and over furniture inside

 - 12 -
 STATE V. COLEY

 Opinion of the Court

his home. Defendant had barely managed to get himself off of the floor and into his

wheelchair when Garris returned and entered Defendant’s home.

 The dissenting opinion argues Garris also had a right to be in the house,

negating the defense of home presumption in N.C. Gen. Stat. § 14-51.2(b). See N.C.

Gen. Stat. § 14-51.2(c)(1). Defendant testified Garris “stayed” in the house

occasionally. Garris testified he only kept some clothes at Defendant’s house, but no

other belongings.

 Presuming a conflict in the evidence exists as to whether Garris had a right to

be in the home, it is to be resolved by the jury, properly instructed. See Moore, 363

N.C. at 796, 688 S.E.2d at 449. Because Defendant intended to and did shoot at

Garris while under attack inside his home, he should have been afforded the

instruction on defense of habitation. N.C. Gen. Stat. § 14-51.2; cf. Cook, __ N.C. App.

at __, 802 S.E.2d at 578.

 VI. Conclusion

 Defendant presented competent evidence at trial that he was acting in self-

defense. The trial court was required to instruct the jury on self-defense. See Morgan,

315 N.C. at 643, 340 S.E.2d at 95. Defendant’s response to the State’s question that

he had fired a “warning shot” is not dispositive of his lack of intent to shoot Garris.

Defendant continuously describes his actions as shooting at Garris, and only stated

he did not intend to kill Garris, which is not a requirement for self-defense. The State

 - 13 -
 STATE V. COLEY

 Opinion of the Court

focuses on two responses at cross-examination to dispense of Defendant’s right to self-

defense, but ignores the remainder of Defendant’s testimony.

 Viewed in the light most favorable to Defendant, the evidence was sufficient to

support a jury instruction on self-defense and on defense of habitation. See Moore,

363 N.C. at 796, 688 S.E.2d at 449; N.C. Gen. Stat. § 14-51.2(b). The trial court’s

failure to provide the requested instructions on self-defense was error and prejudicial,

as Defendant was acquitted by the jury on all charges involving an intent to kill.

Defendant is entitled to a new trial with complete self-defense instructions. See Bass,

__ N.C. at __, 819 S.E.2d at 326. It is so ordered.

 NEW TRIAL.

 Judge CALABRIA concurs.

 Judge ZACHARY dissents with separate opinion.

 - 14 -
 No. COA18-234 – State v. Coley

 ZACHARY, Judge, dissenting.

 In this case, Defendant testified that he fired a warning shot at Garris. This

acknowledgment by Defendant demonstrates that he did not “inten[d] to strike the

victim with the blow,” State v. Ayers, ___, N.C. App. ___, ___, 819 S.E.2d 407, 411,

stay allowed, ___, N.C. ___, 817 S.E.2d 735 (2018), and that such act exceeded that

which was reasonably necessary to protect himself from death or serious bodily harm,

thereby precluding a jury instruction on self-defense. The trial court also correctly

declined to instruct on defense of habitation because Defendant’s testimony that he

fired a warning shot rebuts the statutory presumption of “reasonable fear of

imminent death or serious bodily harm” when using defensive force in the home.

Additionally, Garris was a lawful occupant of Defendant’s residence further

precluding an instruction on defense of habitation. For these reasons and as

explained below, I respectfully dissent.

 I.

 In North Carolina, both statute and case law provide the right to use force to

defend oneself. The General Assembly has enacted two relevant statutes concerning

self-defense and defense of habitation. See N.C. Gen. Stat. §§ 14-51.2, -51.3 (2016).

Concerning defense of the person, N.C. Gen. Stat. § 14-51.3 provides, in pertinent

part:

 (a) A person is justified in using force, except deadly force,
 against another when and to the extent that the person
 STATE V. COLEY

 Zachary, J., dissenting

 reasonably believes that the conduct is necessary to defend
 himself or herself or another against the other’s imminent
 use of unlawful force. However, a person is justified in the
 use of deadly force and does not have a duty to retreat in
 any place he or she has the lawful right to be if either of
 the following applies:
 (1) He or she reasonably believes that such force is
 necessary to prevent imminent death or great bodily
 harm to himself or herself or another.
 (2) Under the circumstances permitted pursuant to
 G.S. 14-51.2.
 (b) A person who uses force as permitted by this section is
 justified in using such force and is immune from civil or
 criminal liability for the use of such force . . . .

Id. § 14-51.3.

 Regarding defense of habitation, N.C. Gen. Stat. § 14-51.2 provides, in

pertinent part:

 (b) The lawful occupant of a home, motor vehicle, or
 workplace is presumed to have held a reasonable fear of
 imminent death or serious bodily harm to himself or herself
 or another when using defensive force that is intended or
 likely to cause death or serious bodily harm to another if
 both of the following apply:
 (1) The person against whom the defensive force
 was used was in the process of unlawfully and
 forcefully entering, or had unlawfully and forcibly
 entered, a home, motor vehicle, or workplace . . . .
 (2) The person who uses defensive force knew or had
 reason to believe that an unlawful and forcible entry
 or unlawful and forcible act was occurring or had
 occurred.
 (c) The presumption set forth in subsection (b) of this
 section shall be rebuttable and does not apply in any of the
 following circumstances:
 (1) The person against whom the defensive force is
 used has the right to be in or is a lawful resident of

 2
 STATE V. COLEY

 Zachary, J., dissenting

 the home, motor vehicle, or workplace, such as an
 owner or lessee, and there is not an injunction for
 protection from domestic violence or a written
 pretrial supervision order of no contact against that
 person.

 ....

 (d) A person who unlawfully and by force enters or
 attempts to enter a person’s home . . . is presumed to be
 doing so with the intent to commit an unlawful act
 involving force or violence.
 (e) A person who uses force as permitted by this section is
 justified in using such force and is immune from civil or
 criminal liability for the use of such force . . . .
 (f) A lawful occupant within his or her home, motor vehicle,
 or workplace does not have a duty to retreat from an
 intruder in the circumstances described in this section.
 (g) This section is not intended to repeal or limit any other
 defense that may exist under the common law.

Id. § 14-51.2(b)-(g).

 However, a defendant cannot establish that he is entitled to a self-defense

instruction under any of these standards when he testifies that he did not “inten[d]

to strike the victim with the blow.” Ayers, ___ N.C. App. at ___, 819 S.E.2d at 411.

 II.

 If an individual reasonably believes that deadly force is necessary to prevent

death or great bodily harm to that individual or to another, then the individual is

justified in the use of that deadly force and does not have a duty to retreat in any

place that the individual has a lawful right to be. N.C. Gen. Stat. § 14-51.3(a)(1)

(2016).

 3
 STATE V. COLEY

 Zachary, J., dissenting

 In State v. Cook, officers were executing a search warrant at the defendant’s

residence while the defendant was upstairs in his bedroom. ___ N.C. App. ___, ___,

802 S.E.2d 575, 576 (2017). Two officers went upstairs and announced their presence

to the defendant. Id. at ___, 802 S.E.2d at 576. As one officer kicked down the door

of the bedroom, the defendant fired two gunshots from inside his bedroom, narrowly

missing an officer. Id. at ___, 802 S.E.2d at 576. On appeal, the defendant argued

that he shot at the officers in self-defense and stated that he had “no specific

intention” when he fired his weapon and was “just scared.” Id. at ___, 802 S.E.2d at

576. This Court, applying § 14-51.3, held that because the defendant “testified that

he did not intend to shoot anyone when he fired his gun . . . he was not entitled to a

self-defense instruction.” Id. at ___, 802 S.E.2d at 576.

 Here, as in Cook, Defendant testified that he did not intend to kill Garris, but

merely to “warn him off” by firing one shot:

 [The State:] Did you shoot [Garris]?

 [Defendant:] Yes, I did.

 [The State:] Did you intend to kill [Garris]?

 [Defendant:] No, I didn’t.

 [The State:] When you shot [Garris] and, be clear, you did
 not intend to kill [Garris]?

 [Defendant:] No, sir. My intentions was to warn him off so
 he wouldn’t hurt me again.

 4
 STATE V. COLEY

 Zachary, J., dissenting

 [The State:] So, you were shooting a warning shot?

 [Defendant:] Yes, sir.

 ....

 [The State:] But it’s your testimony that your intentions
 were not to kill [Garris]?

 [Defendant:] And that is correct. That’s why there was
 only one shot fired.

 [The State:] So, why would you use deadly force if it was
 not your intention to kill [Garris]?

 [Defendant:] Because that was the only means of protection
 that I could use. I had nothing else.

(Emphasis added).

 It is evident from Defendant’s testimony that he intended merely to fire a

warning shot. Defendant’s act of shooting a warning shot exceeded that which was

reasonably necessary to protect himself from death or serious bodily harm, thereby

precluding a jury instruction on self-defense. Therefore, the trial court did not err by

refusing to instruct the jury on self-defense.

 Despite Defendant’s testimony that he meant to fire a warning shot, the

majority argues that “Defendant’s testimony supports his argument that he had shot

at Garris, and intended to do so.” Majority Op. at 6. The majority further states that

all self-defense requires is “that the defendant intentionally used deadly force to

defend himself without retreating from a place where he had a lawful right to be.”

 5
 STATE V. COLEY

 Zachary, J., dissenting

Id. at 5. Shooting a gun at someone is certainly using deadly force, but a warning

shot is not an intentional attempt to strike a blow as Ayers requires. The majority’s

assertion that “[i]f Defendant had intended to simply warn Garris and then cause

further injury to defend himself, he would have fired more than one shot,” id. at 8,

disregards Defendant’s express testimony that demonstrates his lack of intent to

strike a blow to Garris. The manner and number of warning shots should not be

dispositive as to whether a defendant is entitled to a self-defense instruction. Such

insistence muddies the water of self-defense law in this State. When asked whether

Defendant knew that he had hit Garris, Defendant responded, “No, I didn’t at the

time.” This testimony, together with Defendant’s acknowledgement that the one shot

he took was a warning shot, demonstrates that Defendant did not possess an intent

to strike a blow upon Garris. An errant warning shot that inadvertently hits an

attacker does not reveal an intent to shoot the attacker.

 III.

 The trial court properly declined to instruct on defense of habitation as well.

In 2011, the General Assembly enacted the defense of habitation statute, N.C. Gen.

Stat. § 14-51.2, which provides a rebuttable presumption that the lawful occupant of

a home has “a reasonable fear of imminent death or serious bodily harm . . . when

using defensive force that is intended or likely to cause death or serious bodily harm

to another” when the following two circumstances apply. Id. § 14-51.2(b). First, “[t]he

 6
 STATE V. COLEY

 Zachary, J., dissenting

person against whom the defensive force was used was in the process of unlawfully

and forcefully entering, or had unlawfully and forcibly entered, a home, . . . or if that

person had removed or was attempting to remove another against that person’s will

from the home,” and second, “[t]he person who uses defensive force knew or had

reason to believe that an unlawful and forcible entry or unlawful and forcible act was

occurring or had occurred.” Id. § 14-51.2(b)(1),(2).

 The statutory defense of habitation with its presumption of reasonable fear

does not apply where the defendant testifies that he fired a warning shot and did not

intend to shoot his attacker. Cook, ___ N.C. App. at ___, 802 S.E.2d at 578 (“[A]

defendant who testifies that he did not intend to shoot the attacker is not entitled to

an instruction under N.C. Gen. Stat. § 14-51.2 because his own words disprove the

rebuttable presumption that he was in reasonable fear of imminent harm.” (emphasis

added)). Defendant’s testimony that he shot to “warn [Garris] off” without the

intention of shooting him rebuts the statutory presumption that Defendant held a

reasonable fear of imminent harm. Furthermore, a warning shot is not force “that is

intended or likely to cause death or serious bodily harm to another.” Id. § 14-51.2(b).

 Moreover, Garris was a lawful occupant of Defendant’s home, thereby

precluding Defendant’s right to a jury instruction on defense of habitation.

Defendant allowed Garris to live with him at his residence “off and on,” and Garris

possessed a key to the house. Garris testified that on the night that Defendant shot

 7
 STATE V. COLEY

 Zachary, J., dissenting

Garris, he was going to Defendant’s residence to retrieve some of his clothes. The

statutory presumption of “reasonable fear of imminent death or serious bodily harm”

does not apply if “[t]he person against whom the defensive force is used has the right

to be in or is a lawful resident of the home.” Id. § 14-51.2(c)(1).

 Garris was a lawful occupant of the home because he had been living at the

residence, he possessed a key to the residence, and some of his personal belongings

remained at Defendant’s residence. Even viewed in the light most favorable to

Defendant, no evidence was presented that Defendant rescinded Garris’s right to be

present in the home even after their altercation—in fact, Garris testified that he left

“voluntarily” after the altercation with Defendant. For this reason, and because

Defendant’s testimony that he shot a warning shot rebutted the statutory

presumption that Defendant held a reasonable fear of imminent harm, the trial court

correctly declined to instruct the jury on defense of habitation.

 IV.

 Where Defendant testified that he shot in warning, lacking an intent to shoot

the attacker, the trial court did not err in declining to instruct the jury on self-defense

or defense of habitation. In addition, the trial court did not err in refusing to instruct

the jury on defense of habitation where Garris was a lawful occupant of the house

into which he entered. For these reasons, I would find no error in the trial court’s

 8
 STATE V. COLEY

 Zachary, J., dissenting

jury instructions concerning self-defense and defense of habitation. I respectfully

dissent.

 9