TYSON, Judge.
 

 *221
 
 Charles Ward Ayers ("Defendant") appeals from his convictions for discharging a firearm into an occupied and operating vehicle and misdemeanor injury to personal property.
 

 *409
 
 On appeal, he contends the trial court: (1) erred by omitting his requested no-duty-to-retreat instruction from a jury instruction on self-defense; (2) committed plain error by failing to instruct the jury on his right to use non-deadly force in self-defense; and, (3) erred by failing to intervene
 
 ex mero motu
 
 to strike statements made by the prosecutor during closing argument. We vacate Defendant's convictions and grant him a new trial.
 

 I. Background
 

 On 24 March 2015, Defendant was indicted by a grand jury for the offenses of discharging a firearm into an occupied and operating vehicle and injury to personal property. Defendant filed notice of his intent to offer evidence of self-defense at trial.
 

 The evidence presented at trial tended to show that on the evening of 14 January 2015, Defendant, a U.S. Army veteran and disabled paratrooper, went to the Veterans Administration Hospital in Durham for treatment to address back pain. Defendant was there most of the day and was discharged from the hospital around 7 p.m. Defendant returned home by driving eastbound on Highway 98 between Durham and Wake Forest. Near an intersection with Olive Branch Road, a Chevrolet Silverado 1500 pickup truck pulled onto the roadway behind Defendant.
 

 Defendant testified that the weather was cold and wet, as there had been a forecast of snow, but a persistent drizzle of rain fell instead. The roadway was dark as the sun had set and there were very few street lights.
 

 [I]t's an old style Carolina country road. You know, they didn't level out the hills and they didn't straighten out any of the curves, so it kind of meanders.
 

 There's not a lot of places to pass, but where they are, they're short, you know. It's not like you've got a half a mile worth of passing zone. Most of them, maybe if you have 300 yards for a pass, you're lucky.
 

 Defendant testified that when the truck pulled behind him onto Highway 98, two or three cars were traveling in front of him. At times the line of cars would slow down from 45 mph to below 30 mph. Defendant
 
 *222
 
 thought the drivers were cautious because of the weather, darkness and the potential for ice. When the cars in front of Defendant slowed down, Defendant slowed down, but the pickup truck behind him "would end up being pretty snug up on [his] rear bumper." Defendant testified, "At sometimes he was, you know, maybe 50 feet behind me, but at sometimes he was like less than 5 feet." Near the intersection of Highway 98 and Route 50, the only car still traveling in front of Defendant turned off.
 

 The truck continued to follow Defendant for several miles, at times approaching within 5 feet of the rear of his vehicle. Before the intersection of Highway 98 and Route 50, the pickup truck tried to pass, but did not have enough room. After a second failed attempt, the truck began surging to within 10 to 15 inches of Defendant's back bumper. Defendant eventually reached a downhill, 4-mile stretch of road with no oncoming traffic and ample room for the truck to pass. Defendant testified, "He rode my bumper all the way down that hill and all the way across the causeway and the lake, past the recycling center, and he could have passed me at any moment during that almost three-miles worth of driving."
 

 As they started going uphill, the truck pulled alongside Defendant as if to pass. Defendant braked, but the truck slowed too. "I realized he wasn't passing me. He was
 
 pacing
 
 me." (Emphasis supplied).
 

 [T]hen he stepped on the gas, but he also pulled the wheel over and started to come in towards me. ... And he's basically, you know-his rear tire-if I'm sitting here and this is my driver's side door, I could have reached out and touched the rear tire of his truck. That's how close he was to me.
 

 ....
 

 I had reached down and I had grabbed the revolver out of the door pocket.... And I said, well, you know, if he forces me to a stop and he gets out of his vehicle, I'm going to make it clear to him before he approaches me that it's not the right thing to do.
 

 ....
 

 *410
 
 So I had the pistol against my hip. I had put the window down. Now he starts pushing me off the road, and I'm like, "Oh, God, I'm going to roll" because the wheel started to shake. ...
 

 *223
 
 Q. Had you been pushed off the road at some point?
 

 A. My passenger side tires were in the mud. They were off the asphalt, at that point, and he was still pushing me further off. ...
 

 ....
 

 And the car was really starting-you know, the tires were digging into the mud on that side and my steering wheel was really starting to pull, and I knew that I was going to lose control of my car in the next second or two. I basically had no more time left to make a decision. I didn't want to hurt him. ... I said, "Well you know what? I've got a tool in my hand. I don't have to hurt the guy. I can just disable the vehicle".
 

 So what I did was, again, the window was all the way down, and so I literally went and fired directly into the tire at a downward angle, but straight through the sidewall, okay.
 

 Q. How many times did you fire your-
 

 A. Just one.
 

 Upon firing at the truck's tire, Defendant heard a pop and some hissing and saw the back of the truck "shimmy." Defendant came back onto the roadway and stopped his vehicle. The pickup truck came to a safe stop in the middle of the roadway 40 to 60 feet ahead of Defendant. Defendant left the scene and went directly home.
 

 The truck driver was Timothy Parker, a registered nurse, who was going home after work. Parker testified that while he was behind Defendant's vehicle on Highway 98, Defendant would slow down in the no passing zones and then accelerate to prevent Parker from passing him in the safe passing zones. When he did pull alongside Defendant to pass, Parker heard a pop and saw his vehicle's tire pressure warning light come on. "I put it together pretty quickly [that Defendant had shot my tire]." Parker pulled his vehicle over in the median, and made note of Defendant's license plate number as the other vehicle passed.
 

 When law enforcement officers arrived at Defendant's home, he surrendered his firearm and told two Granville County deputies and Wake County Sheriff's Office Investigator Ashley Bledsoe what had happened.
 

 *224
 
 Defendant was indicted for discharging a firearm into an occupied and operating vehicle and misdemeanor injury to personal property on 24 March 2015. The case was tried before a jury beginning on 13 December 2016.
 

 During the charge conference, the trial court stated it intended to give North Carolina Pattern Jury Instruction 308.45 on self-defense "without language about duty or lack of duty to retreat." Defense counsel objected and requested the trial court to give an instruction that Defendant "has no duty to retreat in a place where the [D]efendant has a lawful right to be." N.C.P.I. Crim. 308.45 (2016). The trial court declined to give the requested no-duty-to-retreat instruction.
 

 Following the presentation of the evidence, the jury found Defendant guilty of discharging a firearm into an occupied and operating vehicle and injury to personal property. The trial court entered a consolidated judgment in accordance with the jury's verdicts and sentenced Defendant to an active term of 51 to 74 months, then suspended the sentence and placed Defendant on supervised probation for a period of 36 months. Defendant appeals.
 

 II. Jurisdiction
 

 An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
 

 III. No Duty to Retreat
 

 A. Trial Court's Obligation to Instruct
 

 Defendant contends the trial court was obligated to give his requested jury instruction that he had no duty to retreat from where he had a lawful right to be when confronted with deadly force. "It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988) (citation omitted).
 

 *411
 
 A self-defense instruction is mandated when evidence is presented from which a jury could reasonably infer the defendant acted in self-defense.
 
 State v. Allred
 
 ,
 
 129 N.C. App. 232
 
 , 235,
 
 498 S.E.2d 204
 
 , 206 (1998) (citation omitted). "In determining whether an instruction on ... self-defense must be given, the evidence is to be viewed in the light most favorable to the defendant."
 
 State v. Moore
 
 ,
 
 363 N.C. 793
 
 , 796,
 
 688 S.E.2d 447
 
 , 449 (2010) (citation omitted).
 
 N.C. Gen. Stat. § 14-51.3
 
 (a) states, in relevant part:
 

 *225
 
 A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However,
 
 a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be
 
 if ... the following applies:
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 N.C. Gen. Stat. § 14-51.3
 
 (a) (2017) (emphasis supplied).
 

 Self-defense is an affirmative defense, and "[a]n affirmative defense is one in which the defendant says, 'I did the act charged in the indictment, but I should not be found guilty of the crime charged because * * *.' "
 
 State v. Caddell
 
 ,
 
 287 N.C. 266
 
 , 289,
 
 215 S.E.2d 348
 
 , 363 (1975). Defendant clearly gave the State prior notice of his intent to affirmatively assert self-defense.
 

 Defendant was charged with discharging a firearm into an occupied and operating vehicle and injury to personal property. Both of these offenses are general intent crimes.
 
 See
 

 N.C. Gen. Stat. § 14-160
 
 (a) (2017) ;
 
 State v. Jones,
 

 339 N.C. 114
 
 , 148,
 
 451 S.E.2d 826
 
 , 844 (1994) ("Discharging a firearm into a vehicle does not require that the State prove any specific intent but only that the defendant perform[ed] the act which is forbidden by statute. It is a general intent crime." (citation omitted) ).
 

 By analogy, second-degree murder is also a general intent crime to which a defendant may be entitled to a self-defense instruction, even though the defendant did not intend to assault a victim with the intent to kill, but only the general intent to strike the blow.
 
 See
 

 State v. Richardson
 
 ,
 
 341 N.C. 585
 
 , 594-95,
 
 461 S.E.2d 724
 
 , 730-31 (1995).
 

 The defendant in
 
 Richardson
 
 was convicted of second-degree murder.
 

 Id.
 

 On appeal, the defendant claimed that the jury instruction on self-defense was misleading, since it suggested self-defense was only available if the jury determined the defendant had intended to kill, even though there was no such specific intent requirement to convict the defendant of second-degree murder.
 

 Id.
 

 Our Supreme Court stated that the instruction for self-defense did not mean that the defendant must have had the specific intent to kill the victim to be entitled to assert self-defense, but only that he had the intent to strike the victim with the blow which caused the death:
 

 *226
 
 Contrary to the Court of Appeals' decision, the language in the self-defense instruction does not read into the defense an "intent to kill" that is not an element of second-degree murder. A killing in self-defense involves an admitted, intentional act, as does second-degree murder. However, simply because defendant admitted intentionally committing an act resulting in death does not mean that defendant has admitted forming a specific "intent to kill."
 

 ....
 

 The jury was thus instructed that second-degree murder involved an "intentional killing," but it was also specifically instructed that an intentional killing did not refer to the "presence of a specific intent to kill." The jury was instructed that defendant would be excused of committing second-degree murder if he "reasonably believed it was necessary to kill the victim in order to save himself from death or great bodily harm." There is no reason to suppose that the jury read the self-defense language to include as an element that defendant formed a "specific intent to kill" the victims. ... Reviewing the instructions given to the jury, we conclude that the
 
 *412
 
 jury would not have interpreted the self-defense instruction to include a specific intent to kill, an element not necessary for a conviction of second-degree murder.
 

 Id.
 

 Our Supreme Court recently reaffirmed this principle in
 
 State v. Lee
 
 , in which it held a self-defense instruction was available for a defendant charged with second-degree murder, which does not require a specific intent to kill.
 
 370 N.C. 671
 
 ,
 
 811 S.E.2d 563
 
 (2018).
 

 Although the Supreme Court has held a self-defense instruction is not available where the defendant claims the victim's death was an "accident," each of these cases involves facts where the defendant had testified he did not intend to strike the blow. For example, a self-defense instruction is not available where a defendant states he killed the victim because his gun accidentally discharged.
 
 State v. Blankenship
 
 ,
 
 320 N.C. 152
 
 , 154-55,
 
 357 S.E.2d 357
 
 , 358-59 (1987). A self-defense instruction is not available when a defendant claims he was only firing a warning shot that was not intended to strike the victim.
 
 State v. Cook
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 575
 
 , 577 (2017),
 
 aff'd
 
 ,
 
 370 N.C. 506
 
 ,
 
 809 S.E.2d 566
 
 (2018). These line of cases are factually distinguishable from the
 
 *227
 
 present case and are not controlling, because it is undisputed Defendant intended to "strike the blow" and shoot Parker's tire, even if he did not intend to kill Parker.
 

 This Court held a self-defense instruction was warranted in
 
 State v. Evans
 

 ,
 
 where the defendant was charged with discharging a firearm into an occupied vehicle.
 
 19 N.C. App. 731
 
 , 734,
 
 200 S.E.2d 213
 
 , 214 (1973). In
 
 Evans
 
 , the defendant's evidence tended to show:
 

 [the victim] had given defendant $45.00 for which defendant was going to secure an eight-track tape player and some tape cartridges. Defendant had spent the $45.00 on drugs and had not delivered the tape player. Defendant was told that [the victim] was looking for him and had a pistol. Defendant saw [the victim] parked across the street from defendant's house with a pistol on the seat beside him. Defendant saw [the victim] return to the scene with either a shotgun or rifle. Defendant was afraid of [the victim] and fired a rifle at [the victim's] vehicle to make him leave.
 

 Id.
 
 at 733-34,
 
 200 S.E.2d at 214
 
 .
 

 The trial court had denied the defendant's request for a self-defense instruction.
 
 Id.
 
 at 733,
 
 200 S.E.2d at 214
 
 . Although the defendant had not intended to kill the victim when he fired upon his truck, this Court held the defendant was entitled to a self-defense instruction and remanded for a new trial.
 
 Id.
 
 at 734,
 
 200 S.E.2d at 214
 
 .
 

 The pattern jury instruction for discharging a firearm into an occupied vehicle in operation specifies the language "without justification or excuse" should be given, "where there is evidence of justification or excuse, such as self-defense." N.C.P.I. Crim. 208.90D, fn. 2 (2017). Similarly, the pattern jury instruction for injury to personal property includes the language "defendant did this willfully and wantonly; that is, intentionally and
 
 without justification or excuse
 
 [.]" N.C.P.I. Crim. 223.15 (2017) (emphasis supplied).
 

 As with the general intent crime of second-degree murder, these precedents and authorities show a self-defense instruction is available for both of the offenses Defendant was charged with, because he intended to shoot into Parker's tire, even if he did not intend to kill Parker.
 
 See
 

 Richardson
 
 ,
 
 341 N.C. at 594-95
 
 ,
 
 461 S.E.2d at 730-31
 
 . Following
 
 Evans
 
 and
 
 Richardson
 
 , Defendant was not required to show he "intended to kill" Parker to warrant a self-defense instruction being given to the jury.
 

 *228
 
 Defendant needed only to have shown the intent to "strike the blow" and shoot at Parker's vehicle.
 

 B. Stand Your Ground
 

 Defendant was entitled to a self-defense instruction with no-duty-to-retreat language included. Viewed in the light most favorable to Defendant, the evidence shows Defendant was driving at night in wet conditions with a potential for ice, along a meandering two-lane public highway with few street lights. According to Defendant, Parker came up behind him and persistently tailgated Defendant's vehicle with bright lights, while other traffic was traveling in front of
 
 *413
 
 him. Parker had an opportunity to pass Defendant, instead Parker pulled up alongside him. Defendant slowed down, Parker also slowed and "paced" him, rather than passing, and veered closer towards Defendant's vehicle.
 

 According to Defendant, Parker moved his vehicle into Defendant's lane and was driving so close to his vehicle, Defendant could have reached out from his driver's side window and touched Parker's rear-passenger tire. Defendant's vehicle's passenger-side tires were both off the paved portion of the road on the muddy shoulder. Defendant stated he was afraid he would lose control, his vehicle would flip upside down, and he would be paralyzed.
 

 Whether Defendant's use of force under these circumstances was reasonable or excessive is clearly a question of fact to be determined by the jury upon proper instructions.
 
 State v. Benge
 
 ,
 
 272 N.C. 261
 
 , 264,
 
 158 S.E.2d 70
 
 , 72 (1967) ("[T]he question of excessive force is to be determined by the jury." (citation omitted) ).
 

 Defendant was present in a location he lawfully had a right to be: driving inside his vehicle upon a public highway. Defendant was under no legal obligation to stop, pull off the road, veer from his lane of travel, or to engage his brakes and risk endangering himself.
 
 See
 

 N.C. Gen. Stat. § 14-51.3
 
 (a).
 

 Without the jury being instructed that Defendant had no duty to retreat from a place where he lawfully had a right to be, the jury could have determined, as the prosecutor argued in closing, that Defendant was under a legal obligation to cower and retreat. This notion would have required Defendant to have (1) further slowed down while being "paced," (2) pulled off the road, or (3) ceased maintaining his lawful course of travel to avoid Parker's use of his truck as a deadly weapon to force him off the road, in order to avoid criminal liability.
 
 See
 

 State v. Jackson
 
 ,
 
 74 N.C. App. 92
 
 , 95,
 
 327 S.E.2d 270
 
 , 272 (1985) ("[A] motor
 
 *229
 
 vehicle may be a deadly weapon if used in a dangerous and reckless manner." (citation omitted) ).
 

 Viewed in the light most favorable to Defendant, there is a "reasonable possibility that, had the trial court given the required stand-your-ground instruction [to the jury], a different result would have been reached at trial."
 
 Lee
 
 , 370 N.C. at 676,
 
 811 S.E.2d at 567
 
 . Defendant is entitled to a new trial with proper jury instructions on self-defense.
 

 IV. Conclusion
 

 Self-preservation is the most basic and fundamental natural right any individual possesses. The ability of an individual to protect and defend himself against force, and particularly deadly force, and to maintain one's life and very existence against assertions of deadly force is essential to preserving life.
 
 See
 

 State v. Holland
 
 ,
 
 193 N.C. 713
 
 , 718,
 
 138 S.E. 8
 
 , 10 (1927) ("The first law of nature is that of self-defense. The law of this State and elsewhere recognizes this primary impulse and inherent right.").
 

 The trial court erred in failing to instruct the jury that Defendant had no duty to retreat. Defendant was entitled to a self-defense instruction, including language that Defendant had no duty to retreat or could defend and stand his ground where he was in a location where he had a "lawful right to be."
 
 N.C. Gen. Stat. § 14-51.3
 
 (a). Defendant has shown a reasonable possibility the jury could have returned a different verdict had the trial court given the requested and statutorily mandated self-defense and no-duty-to-retreat instruction to the jury.
 
 See
 
 id.
 

 In light of our award of a new trial, the remaining issues are moot and it is not necessary to address them. We reverse Defendant's convictions and remand for a new trial with proper instructions.
 
 It is so ordered.
 

 NEW TRIAL.
 

 Judges BRYANT and ELMORE concur.