TYSON, Judge.
*249 John Thomas Coley ("Defendant") appeals from his convictions of assault with a deadly weapon inflicting serious injury and possession of a firearm by a felon. Defendant argues on appeal that the trial court *250 erred by declining to instruct the jury on self-defense and defense of habitation. We reverse Defendant's convictions, vacate the judgment, and grant him a new trial.
I. Background
On the evening of 7 June 2016, Defendant was sitting outside of his neighbor's house with friends. At the time, Defendant was recovering from a broken leg and was using crutches and a wheelchair. Derrick Garris, who "stayed at [Defendant's] house off and on," approached Defendant at the neighbor's house and punched Defendant, causing him to fall out of his chair. Defendant got up and began walking home on crutches. When Defendant arrived home, Garris grabbed Defendant and threw him up against the door. After Defendant opened the door, Garris grabbed Defendant and threw him over two chairs. Defendant bounced off the chairs and landed on the floor. Garris then grabbed and threw Defendant into a recliner. Garris repeatedly called Defendant "12," which is slang for a narcotics officer or law enforcement agent, and accused Defendant of "snitch[ing] on [his] brothers" and getting them "locked up" for trafficking guns. Defendant denied Garris' accusations.
*764 Garris left, but quickly returned with a friend, Djimon Lucas, allegedly to retrieve his clothes. As Defendant attempted to explain the earlier events to Lucas, Garris punched Defendant a couple more times and then left again. Defendant testified that by the time he had climbed from the floor into his wheelchair, he saw Garris once more entering the house. As Garris entered, Defendant reached down beside his wheelchair, retrieved a gun, and shot at Garris. Conversely, Garris testified that he was standing in the street in front of the house when the gunshot hit him and that he fled the scene seeking medical assistance.
On 12 December 2016, the Guilford County Grand Jury indicted Defendant for attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon. During the charge conference at trial, the court denied Defendant's request for jury instructions on self-defense and defense of habitation. Defendant objected and preserved the issue for appeal.
The jury found Defendant not guilty of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The jury found Defendant guilty of assault with a deadly weapon inflicting serious injury, a lesser-included offense without intent to kill, and possession of a firearm by a felon. The trial court sentenced Defendant to twenty-six to forty-four months' imprisonment for assault with a deadly weapon inflicting serious injury, together with a *251 consecutive term of thirteen to twenty-five months for possession of a firearm by a felon. Defendant gave oral notice of appeal in court.
II. Jurisdiction
An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Standard of Review
A defendant is entitled to a self-defense instruction when "competent evidence of self-defense is presented at trial." State v. Morgan , 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (emphasis omitted). Defendant's evidence, taken as true, is sufficient to support the instruction, even if contradictory evidence exists. State v. Moore , 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010). "[T]he evidence is to be viewed in the light most favorable to the defendant." Id. (citation omitted). "[A] defendant entitled to any self-defense instruction is entitled to a complete self-defense instruction, which includes the relevant stand-your-ground provision." State v. Bass , --- N.C. ----, ----, 819 S.E.2d 322, 326 (2018).
Determining whether a trial court erred in instructing the jury is a question of law reviewed de novo . State v. Voltz , --- N.C. App. ----, ----, 804 S.E.2d 760, 765 (2017). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).
IV. Self-Defense
Defendant argues the trial court erred by failing to instruct the jury on self-defense. We agree.
The trial judge must instruct the jury on the law applicable to the substantive features of the case arising from the evidence and apply the law to the facts of the case. State v. Covington , 317 N.C. 127, 131, 343 S.E.2d 524, 527 (1986). Self-defense is a substantial and essential feature of a case; thus, a defendant who presents competent evidence of self-defense at trial is entitled to a jury instruction on this defense. Morgan , 315 N.C. at 643, 340 S.E.2d at 95. The evidence is viewed in the light most favorable to the defendant, and if the evidence taken as true is sufficient to support a self-defense instruction, it must be given, even if the State presents contradictory evidence. Moore , 363 N.C. at 796, 688 S.E.2d at 449.
In North Carolina, the right to use deadly force to defend oneself is provided both by statute and case law. Under statute,
*252 (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful *765 force. However, a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
(2) Under the circumstances permitted pursuant to G.S. 14-51.2.
N.C. Gen. Stat. § 14-51.3(a) (2017) (emphasis supplied).
The State's cross-examination of Defendant focused upon whether or not Defendant had intended to kill Garris when Defendant shot at him. However, intent to kill is not necessary for an instruction on self-defense, only that the defendant intentionally used deadly force to defend himself without retreating from a place where he had a lawful right to be. State v. Richardson , 341 N.C. 585, 594, 461 S.E.2d 724, 730 (1995) ("self-defense involves an admitted, intentional act"); see also State v. Ayers , --- N.C. App. ----, ----, 819 S.E.2d 407, 412 ("Defendant intended to 'strike the blow' ... even if he did not intend to kill"), stay allowed , --- N.C. ----, 817 S.E.2d 735 (2018).
An instruction on self-defense is not appropriate where a defendant testifies he did not intend to hit anyone when he fired his weapon. State v. Cook , --- N.C. App. ----, ----, 802 S.E.2d 575, 577 (2017), aff'd per curiam , 370 N.C. 506, 809 S.E.2d 566 (2018) ("a defendant who fires a gun in the face of a perceived attack is not entitled to a self-defense instruction if he testifies that he did not intend to shoot the attacker when he fired the gun").
Defendant's statement of the shot being a "warning shot" came only as a response to the prosecutor's question on whether Defendant had "intend[ed] to kill" Garris. Taken as a whole, Defendant's testimony supports his argument that he had shot at Garris, and intended to do so:
[Prosecutor:] Did you shoot [Garris]?
[Defendant:] Yes, I did.
[Prosecutor:] Did you intend to kill [Garris]?
*253 [Defendant:] No, I didn't.
[Prosecutor:] When you shot [Garris] and, be clear, you did not intend to kill [Garris]?
[Defendant:] No, sir. My intentions was to warn him off so he wouldn't hurt me again.
[Prosecutor:] So, you were shooting a warning shot?
[Defendant:] Yes, sir.
[Prosecutor:] So, isn't a warning shot when you shoot in the air?
[Defendant:] Sometimes people shoot warning shots in the air, sometimes people shoot them at the door, sometimes people shoot warning shots at people's feet. I mean, there's several places you can shoot a warning shot.
[Prosecutor:] But it's your testimony that your intentions were not to kill [Garris]?
[Defendant:] And that is correct. That's why there was only one shot fired.
[Prosecutor:] So, why would you use deadly force if it was not your intention to kill [Garris]?
[Defendant:] Because that was the only means of protection that I could use. I had nothing else.
(Emphasis supplied).
The prosecutor introduced the idea of a warning shot, and tried to assert a warning shot would occur when a person "shoot[s] in the air." Our precedents hold this action would not be entitled to a self-defense instruction. State v. Williams , 342 N.C. 869, 873, 467 S.E.2d 392, 394 (1996) (instruction on self-defense is not appropriate where "the defendant testified that he fired his pistol three times into the air to scare [the victim] and the others and make them retreat so he could leave the area").
Defendant's testimony asserts he only fired one shot at Garris because he did not intend to kill him, but was using "the only means of protection" he had to defend himself against Garris' repeated attacks. If Defendant had intended to simply warn Garris and then cause further injury to defend himself, he would have fired more than one shot. See id. at 874, 467 S.E.2d at 394-95 (where defendant fired three warning shots, *254 and the third one struck the victim in the back, "it is *766 entirely unreasonable to believe" a person would have thought the use of deadly force was necessary to protect himself from a fleeing assailant).
In Williams , our Supreme Court concluded "a reasonable person believing that the use of deadly force was necessary to save his or her life would have pointed the pistol at the perceived threat and fired at the perceived threat." Id. Such a belief must be "objectively reasonable." Id. In the light most favorable to him, Defendant's testimony and cross-examination, including the testimony above, indicates he had a reasonable belief Garris would continue to severely injure him or even kill him. Defendant shot at Garris to "strike the blow" as a way to prevent further assault or death.
During direct examination, Defendant had testified to his fear of Garris. Garris had implied Defendant was a "snitch" and, as Defendant stated:
[Defendant:] Normally in the streets a snitch get beat up. They jump-they jump on snitches.
[Defense Counsel:] Okay. When you say beat up, is-is that the extent of it?
[Defendant:] I mean, it could go from being killed, beaten with bats. I mean, it's-there's no limit to what could happen to you.
...
[Defense Counsel:] You said you had a feeling he was going to come back. Why-why did you have that feeling?
[Defendant:] Because he had already jumped on me so many times, I mean, he-he, as they seen, as the jury seen, he's a pretty big dude. He had jumped on me so many times, I took him as being a aggressive individual.
[Defense Counsel:] Did you-did you have any-what-what did you think he was going to do if he came back?
[Defendant:] He was going to jump on me again or possibly even kill me. I, you know, I had no understanding of what he might have did.
...
*255 [Defendant:] Well, again, like I said, he had attacked me so many times, my statement he was going to jump on me as if he was going to punch me in my face or maybe even try to hurt, harm, or endanger me physically. Like I never knew what he left to go get, as if he might have-he could have went and got another weapon, I don't know.
Defendant's testimony of his fear of Garris, his uncertainty of whether Garris was armed, and his need to protect himself continued during cross-examination.
[Prosecutor:] Okay. And you-[Garris] did not have a gun in his hand when he walked in the door, did he?
[Defendant:] No, he didn't, but I don't know what he had. He could have possessed a knife, a bat, anything.
[Prosecutor:] He could have, but you didn't see any of that in his hand, did you?
[Defendant:] I don't know what he possessed.
[Prosecutor:] I'm just asking what you saw.
[Defendant:] At the time, no, I wasn't looking to see what he had. I was only worried about getting hurt.
[Prosecutor:] So, the answer to my question is you did not see a weapon in [Garris'] hand?
[Defendant:] At the time I didn't-I wasn't looking. I was more focused on not getting hurt.
...
[Prosecutor:] How would you describe the force that you used?
[Defendant:] As protective.
[Prosecutor:] Did you think that the shot that you gave [Garris] was something that he could die from?
[Defendant:] No, I didn't.
[Prosecutor:] So, you didn't think that shooting a person in vital areas of their body they would die from that?
[Defendant:] I didn't feel it was a vital area.
*256 ...
[Prosecutor:] So, you thought the appropriate response was to shoot him?
*767 [Defendant:] Once he came back in, I felt like he was going to attack me another time, yes, sir.
(Emphasis supplied).
Viewing Defendant's testimony as true, competent evidence was presented from which a jury could reasonably infer Defendant intended to "strike the blow" when he aimed at Garris and shot his gun in self-defense. Ayers , --- N.C. App. at ----, 819 S.E.2d at 412 ; cf. Williams , 342 N.C. at 873, 467 S.E.2d at 394.
Viewed in the light most favorable to him, ample testimony was presented showing Defendant had an objectively reasonable belief he needed to use deadly force to repel another physical attack to his person by Garris. Cf. Williams , 342 N.C. at 873, 467 S.E.2d at 394. Because of the previous assaults by Garris, Defendant, who required the use of a wheelchair or crutches to maneuver and ambulate as a result of his injuries, was reasonably afraid of further injury or even death. Defendant did not know whether or not Garris had retrieved a weapon before Garris returned, after multiple prior assaults, and came back into Defendant's home for a final time. "From this evidence, a jury could reasonably infer that [D]efendant reasonably believed [Garris] was armed at the time of the altercation." State v. Irabor , --- N.C. ----, ----, 822 S.E.2d 421, 425, 2018 WL 6051600, at *4 (2018).
The State's argument focuses on a very brief portion of Defendant's responses to the prosecutor's questions, that he fired a "warning shot," but neglects to review in the light most favorable to Defendant his testimony to support a jury instruction for self-defense. Even though contradictory evidence exists, sufficient evidence was presented to provide an instruction on self-defense to the jury. Moore , 363 N.C. at 796, 688 S.E.2d at 449 ; see also Irabor , --- N.C. at ----, 822 S.E.2d at 425, 2018 WL 6051600, at *4.
V. Defense of Habitation
Our statutes provide that a lawful occupant of a home "is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another" if:
(1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, *257 or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
(2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
N.C. Gen. Stat. § 14-51.2(b) (2017). Further, any "person who unlawfully and by force enters or attempts to enter a person's home ... is presumed to be doing so with the intent to commit an unlawful act involving force or violence." N.C. Gen. Stat. § 14-51.2(d).
Defendant was inside his home when Garris crossed over the door's threshold, according to Defendant's testimony. Garris had repeatedly assaulted Defendant previously that evening, including throwing Defendant into and over furniture inside his home. Defendant had barely managed to get himself off of the floor and into his wheelchair when Garris returned and entered Defendant's home.
The dissenting opinion argues Garris also had a right to be in the house, negating the defense of home presumption in N.C. Gen. Stat. § 14-51.2(b). See N.C. Gen. Stat. § 14-51.2(c)(1). Defendant testified Garris "stayed" in the house occasionally. Garris testified he only kept some clothes at Defendant's house, but no other belongings.
Presuming a conflict in the evidence exists as to whether Garris had a right to be in the home, it is to be resolved by the jury, properly instructed. See Moore , 363 N.C. at 796, 688 S.E.2d at 449. Because Defendant intended to and did shoot at Garris while under attack inside his home, he should have been afforded the instruction on defense of habitation. N.C. Gen. Stat. § 14-51.2 ; cf. Cook , --- N.C. App. at ----, 802 S.E.2d at 578.
*768 VI. Conclusion
Defendant presented competent evidence at trial that he was acting in self-defense. The trial court was required to instruct the jury on self-defense. See Morgan , 315 N.C. at 643, 340 S.E.2d at 95. Defendant's response to the State's question that he had fired a "warning shot" is not dispositive of his lack of intent to shoot Garris. Defendant continuously describes his actions as shooting at Garris, and only stated he did not intend to kill Garris, which is not a requirement for self-defense. The State focuses on two responses at cross-examination to dispense *258 of Defendant's right to self-defense, but ignores the remainder of Defendant's testimony.
Viewed in the light most favorable to Defendant, the evidence was sufficient to support a jury instruction on self-defense and on defense of habitation. See Moore , 363 N.C. at 796, 688 S.E.2d at 449 ; N.C. Gen. Stat. § 14-51.2(b). The trial court's failure to provide the requested instructions on self-defense was error and prejudicial, as Defendant was acquitted by the jury on all charges involving an intent to kill. Defendant is entitled to a new trial with complete self-defense instructions. See Bass , --- N.C. at ---, 819 S.E.2d at 326. It is so ordered.
NEW TRIAL.
Judge CALABRIA concurs.
Judge ZACHARY dissents with separate opinion.