ZACHARY, Judge, dissenting.
In this case, Defendant testified that he fired a warning shot at Garris. This acknowledgment by Defendant demonstrates that he did not "inten[d] to strike the victim with the blow," State v. Ayers, --- N.C. App. ----, ----, 819 S.E.2d 407, 411, stay allowed , --- N.C. ----, 817 S.E.2d 735 (2018), and that such act exceeded that which was reasonably necessary to protect himself from death or serious bodily harm, thereby precluding a jury instruction on self-defense. The trial court also correctly declined to instruct on defense of habitation because Defendant's testimony that he fired a warning shot rebuts the statutory presumption of "reasonable fear of imminent death or serious bodily harm" when using defensive force in the home. Additionally, Garris was a lawful occupant of Defendant's residence further precluding an instruction on defense of habitation. For these reasons and as explained below, I respectfully dissent.
I.
In North Carolina, both statute and case law provide the right to use force to defend oneself. The General Assembly has enacted two relevant statutes concerning self-defense and defense of habitation. See N.C. Gen. Stat. §§ 14-51.2, -51.3 (2016). Concerning defense of the person, N.C. Gen. Stat. § 14-51.3 provides, in pertinent part:
*259 (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if either of the following applies:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
(2) Under the circumstances permitted pursuant to G.S. 14-51.2.
(b) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force....
Id. § 14-51.3.
Regarding defense of habitation, N.C. Gen. Stat. § 14-51.2 provides, in pertinent part:
(b) The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
(1) The person against whom the defensive force was used was in the process of *769 unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace....
(2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
(c) The presumption set forth in subsection (b) of this section shall be rebuttable and does not apply in any of the following circumstances:
(1) The person against whom the defensive force is used has the right to be in or is a lawful resident of the home, motor vehicle, or workplace, such as an owner *260 or lessee, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person.
....
(d) A person who unlawfully and by force enters or attempts to enter a person's home ... is presumed to be doing so with the intent to commit an unlawful act involving force or violence.
(e) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force....
(f) A lawful occupant within his or her home, motor vehicle, or workplace does not have a duty to retreat from an intruder in the circumstances described in this section.
(g) This section is not intended to repeal or limit any other defense that may exist under the common law.
Id. § 14-51.2(b)-(g).
However, a defendant cannot establish that he is entitled to a self-defense instruction under any of these standards when he testifies that he did not "inten[d] to strike the victim with the blow." Ayers, --- N.C. App. at ----, 819 S.E.2d at 411.
II.
If an individual reasonably believes that deadly force is necessary to prevent death or great bodily harm to that individual or to another, then the individual is justified in the use of that deadly force and does not have a duty to retreat in any place that the individual has a lawful right to be. N.C. Gen. Stat. § 14-51.3(a)(1) (2016).
In State v. Cook , officers were executing a search warrant at the defendant's residence while the defendant was upstairs in his bedroom. --- N.C. App. ----, ----, 802 S.E.2d 575, 576 (2017). Two officers went upstairs and announced their presence to the defendant. Id. at ----, 802 S.E.2d at 576. As one officer kicked down the door of the bedroom, the defendant fired two gunshots from inside his bedroom, narrowly missing an officer. Id. at ----, 802 S.E.2d at 576. On appeal, the defendant argued that he shot at the officers in self-defense and stated that he had "no specific intention" when he fired his weapon and was "just scared." Id. at ----, 802 S.E.2d at 576. This Court, applying § 14-51.3, held that because the defendant "testified that he did not intend to shoot anyone *261 when he fired his gun ... he was not entitled to a self-defense instruction." Id. at ----, 802 S.E.2d at 576.
Here, as in Cook , Defendant testified that he did not intend to kill Garris, but merely to "warn him off" by firing one shot:
[The State:] Did you shoot [Garris]?
[Defendant:] Yes, I did.
[The State:] Did you intend to kill [Garris]?
[Defendant:] No, I didn't.
[The State:] When you shot [Garris] and, be clear, you did not intend to kill [Garris]?
[Defendant:] No, sir. My intentions was to warn him off so he wouldn't hurt me again.
[The State:] So, you were shooting a warning shot?
[Defendant:] Yes, sir.
....
[The State:] But it's your testimony that your intentions were not to kill [Garris]?
[Defendant:] And that is correct. That's why there was only one shot fired.
[The State:] So, why would you use deadly force if it was not your intention to kill [Garris]?
*770 [Defendant:] Because that was the only means of protection that I could use. I had nothing else.
(Emphasis added).
It is evident from Defendant's testimony that he intended merely to fire a warning shot. Defendant's act of shooting a warning shot exceeded that which was reasonably necessary to protect himself from death or serious bodily harm, thereby precluding a jury instruction on self-defense. Therefore, the trial court did not err by refusing to instruct the jury on self-defense.
Despite Defendant's testimony that he meant to fire a warning shot, the majority argues that "Defendant's testimony supports his argument that he had shot at Garris, and intended to do so." Majority Op. at 765. The *262 majority further states that all self-defense requires is "that the defendant intentionally used deadly force to defend himself without retreating from a place where he had a lawful right to be." Id. at 765. Shooting a gun at someone is certainly using deadly force, but a warning shot is not an intentional attempt to strike a blow as Ayers requires. The majority's assertion that "[i]f Defendant had intended to simply warn Garris and then cause further injury to defend himself, he would have fired more than one shot," id. at 765, disregards Defendant's express testimony that demonstrates his lack of intent to strike a blow to Garris. The manner and number of warning shots should not be dispositive as to whether a defendant is entitled to a self-defense instruction. Such insistence muddies the water of self-defense law in this State. When asked whether Defendant knew that he had hit Garris, Defendant responded, "No, I didn't at the time." This testimony, together with Defendant's acknowledgement that the one shot he took was a warning shot, demonstrates that Defendant did not possess an intent to strike a blow upon Garris. An errant warning shot that inadvertently hits an attacker does not reveal an intent to shoot the attacker.
III.
The trial court properly declined to instruct on defense of habitation as well. In 2011, the General Assembly enacted the defense of habitation statute, N.C. Gen. Stat. § 14-51.2, which provides a rebuttable presumption that the lawful occupant of a home has "a reasonable fear of imminent death or serious bodily harm ... when using defensive force that is intended or likely to cause death or serious bodily harm to another" when the following two circumstances apply. Id. § 14-51.2(b). First, "[t]he person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, ... or if that person had removed or was attempting to remove another against that person's will from the home," and second, "[t]he person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred." Id. § 14-51.2(b)(1),(2).
The statutory defense of habitation with its presumption of reasonable fear does not apply where the defendant testifies that he fired a warning shot and did not intend to shoot his attacker. Cook , --- N.C. App. at ----, 802 S.E.2d at 578 ("[A] defendant who testifies that he did not intend to shoot the attacker is not entitled to an instruction under N.C. Gen. Stat. § 14-51.2 because his own words disprove the rebuttable presumption that he was in reasonable fear of imminent harm." (emphasis added) ). Defendant's testimony that he shot to "warn [Garris] off"
*263 without the intention of shooting him rebuts the statutory presumption that Defendant held a reasonable fear of imminent harm. Furthermore, a warning shot is not force "that is intended or likely to cause death or serious bodily harm to another." Id. § 14-51.2(b).
Moreover, Garris was a lawful occupant of Defendant's home, thereby precluding Defendant's right to a jury instruction on defense of habitation. Defendant allowed Garris to live with him at his residence "off and on," and Garris possessed a key to the house. Garris testified that on the night that Defendant shot Garris, he was going to Defendant's residence to retrieve some of his clothes. The statutory presumption of "reasonable fear of imminent death or serious bodily harm" does not apply if "[t]he person *771 against whom the defensive force is used has the right to be in or is a lawful resident of the home." Id. § 14-51.2(c)(1).
Garris was a lawful occupant of the home because he had been living at the residence, he possessed a key to the residence, and some of his personal belongings remained at Defendant's residence. Even viewed in the light most favorable to Defendant, no evidence was presented that Defendant rescinded Garris's right to be present in the home even after their altercation-in fact, Garris testified that he left "voluntarily" after the altercation with Defendant. For this reason, and because Defendant's testimony that he shot a warning shot rebutted the statutory presumption that Defendant held a reasonable fear of imminent harm, the trial court correctly declined to instruct the jury on defense of habitation.
IV.
Where Defendant testified that he shot in warning, lacking an intent to shoot the attacker, the trial court did not err in declining to instruct the jury on self-defense or defense of habitation. In addition, the trial court did not err in refusing to instruct the jury on defense of habitation where Garris was a lawful occupant of the house into which he entered. For these reasons, I would find no error in the trial court's jury instructions concerning self-defense and defense of habitation. I respectfully dissent.