IN THE SUPREME COURT OF NORTH CAROLINA

No. 2A19

Filed 14 August 2020

STATE OF NORTH CAROLINA

v.

JOHN THOMAS COLEY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the unpublished decision of a divided panel of the Court of Appeals, 263 N.C. App. 249, 822 S.E.2d 762 (2018), finding error in and reversing judgments entered on 25 September 2017 by Judge Richard S. Gottlieb in Superior Court, Guilford County, and ordering a new trial. Heard in the Supreme Court on 5 November 2019.

> *Joshua H. Stein, Attorney General, by Michael T. Henry, Assistant Attorney General, for the State-appellant.*
>
> *Kimberly P. Hoppin for defendant-appellee.*

MORGAN, Justice.

The sole issue before this Court is whether the trial court erred by declining to deliver defendant's requested jury instructions on self-defense and the defense of habitation. We hold that the evidence, when viewed in the light most favorable to defendant, was sufficient to require the trial court to give defendant's requested instructions to the jury. Accordingly, we affirm the decision of the Court of Appeals reversing defendant's convictions, vacating the trial court's judgments, and granting defendant a new trial.

*Factual and Procedural Background*

The evidence presented at trial tended to show that Derrick Garris "stayed at [defendant's] house off and on" during the early months of 2016. Although the relationship between Garris and defendant was initially cordial, Garris eventually suspected that defendant was working with law enforcement in connection with the detection of criminal activity. On the evening of 7 June 2016, defendant was sitting outside of a neighbor's house with a group of friends when Garris approached defendant and punched him, causing defendant to fall out of his chair. At the time, defendant was recovering from a broken leg and his mobility required the use of crutches and a wheelchair. After Garris hit defendant, defendant got up and began walking home. Garris followed defendant.

When defendant arrived at his residence, Garris grabbed defendant and threw him against the door of the home. After defendant opened the door, Garris seized defendant again and hurled him over two chairs. Defendant bounced off of the chairs and landed on the floor. Garris then snatched up defendant and flung him against a recliner. During this altercation, Garris repeatedly accused defendant of "snitch[ing] on [his] brothers" for trafficking in guns. Defendant denied making such statements to law enforcement officers. At trial, when asked on direct examination about "what happens to snitches," defendant testified that "it could go from being killed, beaten with bats. . . . there's no limit to what could happen to you." Garris eventually left defendant's residence but quickly returned, accompanied by a friend, Djimon Lucas.

Defendant testified at trial that at this point, he was "[s]cared, fearful" and "didn't know what was going on at the time." As defendant attempted to explain the earlier events to Lucas, Garris struck defendant a couple more times and then departed the house again.

By the time defendant had climbed from the floor into his wheelchair, he saw Garris once more entering defendant's house. Defendant testified at trial that he "never knew what he left to go get, as if he might have . . . went and got another weapon." Defendant stated that he feared that "[Garris] was going to jump on [him] again or possibly even kill [him]." As Garris burst into defendant's home for a third time, defendant reached down beside his wheelchair, retrieved a gun, and shot Garris, injuring him. Defendant was ultimately indicted for the offenses of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon.

Defendant had given notice at trial of his intent to rely upon a theory of self-defense. During the jury charge conference conducted after the presentation of all of the evidence, defendant requested jury instructions on self-defense and the defense of habitation. The trial court, however, declined to deliver defendant's requested instructions to the jury and instead directed the jury to consider only whether defendant was guilty of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a firearm by a felon. No

form of a self-defense instruction was presented to the jury by the trial court. Defendant objected and preserved the jury instruction issue for appeal.

Upon the conclusion of deliberations, the members of the jury found defendant not guilty of the offenses of attempted first-degree murder and assault with a deadly weapon with intent to kill inflicting serious injury. The jury instead found defendant guilty of assault with a deadly weapon inflicting serious injury—a lesser-included offense of assault with a deadly weapon with intent to kill inflicting serious injury—and possession of a firearm by a felon. Following the jury's verdicts, the trial court sentenced defendant to a term of imprisonment of twenty-six to forty-four months for the assault with a deadly weapon inflicting serious injury offense, together with a consecutive term of thirteen to twenty-five months of incarceration for the offense of possession of a firearm by a felon. Defendant appealed his convictions to the Court of Appeals based upon the trial court's failure to give his requested self-defense and defense-of-habitation instructions to the jury.

On appeal, defendant argued that the trial court erred by (1) denying his request to instruct the jury on self-defense, (2) failing to instruct the jury on the "stand-your-ground" provision, and (3) denying his request to instruct the jury on the defense of habitation. A divided panel of the Court of Appeals agreed. In reaching its decision, the Court of Appeals majority determined that "[d]efendant had an objectively reasonable belief [that] he needed to use deadly force to repel another physical attack to his person" and prevent death or great bodily harm to his person.

*State v. Coley*, 263 N.C. App. 249, 256, 822 S.E.2d 762, 767 (2018). The Court of Appeals majority further concluded that in the event that defendant's requested jury instructions had been properly delivered to the jury, there was a reasonable possibility that the jury would have reached a different result. *Id.* at 258, 822 S.E.2d at 768. The majority therefore held that the trial court committed error by failing to give instructions to the jury, as requested by defendant, on the law of self-defense with the stand-your-ground provision and the law of the defense of habitation because the evidence was sufficient to support the instructions submitted by defendant when the evidence is viewed in the light most favorable to him. Accordingly, the Court of Appeals reversed defendant's convictions, vacated the trial court's judgments, and granted defendant a new trial with complete self-defense instructions. *Id.* The dissenting judge at the Court of Appeals opined that defendant's warning shot at Garris was an act that exceeded the level of force that was reasonably necessary to protect defendant from death or serious bodily harm, thus precluding a jury instruction on self-defense. *Id.* at 261, 822 S.E.2d at 770 (Zachary, J., dissenting). The dissenting judge also considered the trial court to be correct in declining to give defendant's requested jury instruction on the defense of habitation, viewing defendant's testimony about the warning shot and considering Garris to be a lawful occupant of defendant's residence as obviating the necessity for the delivery of such an instruction. *Id.* at 263, 822 S.E.2d at 771.

We agree with the Court of Appeals majority in its resolution of the matters presented in this case, as this Court concludes that the decision of the lower appellate court is sound and correct.

*Analysis*

"The jury charge is one of the most critical parts of a criminal trial." *State v. Watson*, 367 N.C. 721, 730, 766 S.E.2d 312, 318 (2014). "It is the duty of the trial court to instruct on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988). This Court has consistently held that "where competent evidence of self-defense is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature of the case, and the trial judge must give the instruction even absent any specific request by the defendant." *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (emphasis omitted) (citations omitted); *see also, e.g., State v. Deck*, 285 N.C. 209, 215, 203 S.E.2d 830, 834 (1974) ("When supported by competent evidence, self-defense unquestionably becomes a substantial and essential feature of a criminal case."). In determining whether a defendant has presented competent evidence sufficient to support a self-defense instruction, we take the evidence as true and consider it in the light most favorable to the defendant. *State v. Moore*, 363 N.C. 793, 796, 688 S.E.2d 447, 449 (2010). Once a showing is made that the defendant has presented such competent evidence, "the court must charge on this aspect even though there is contradictory evidence by the State or discrepancies in defendant's

evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974). "[A] defendant entitled to *any* self-defense instruction is entitled to a *complete* self-defense instruction, which includes the relevant stand-your-ground provision." *State v. Bass*, 371 N.C. 535, 542, 819 S.E.2d 322, 326 (2018).

In North Carolina, the right to use deadly force to defend oneself is provided both by statute and case law. Pursuant to the applicable statutory law, there are two circumstances in which individuals are justified in using deadly force, thus excusing them from criminal culpability under the theory of self-defense. Firstly, section 14-51.3 of the General Statutes of North Carolina provides, in pertinent part, the following:

> (a) A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that the conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, *a person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if* either of the following applies:
>
> > (1) *He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.*
> >
> > (2) Under the circumstances permitted pursuant to G.S. 14-51.2.
>
> (b) A person who uses force as permitted by this section is justified in using such force and is immune from civil or criminal liability for the use of such force . . . .

N.C.G.S. § 14-51.3 (2019) (emphases added). Secondly, N.C.G.S. § 14.51.2(b) states

the following:

> The lawful occupant of a home, motor vehicle, or workplace is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> > (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace, or if that person had removed or was attempting to remove another against that person's will from the home, motor vehicle, or workplace.
> >
> > (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

N.C.G.S. § 14-51.2(b) (2019).

Under either statutory provision a person does not have a duty to retreat but may stand his ground against an intruder. *State v. Lee*, 370 N.C. 671, 675, 811 S.E.2d 563, 566 (2018); *see also Bass*, 371 N.C. at 541, 819 S.E.2d at 325–26 ("Both sections provide that individuals using force as described . . . have no duty to retreat before using defensive force.") Consequently, when an individual who was not the aggressor is located in his home when the assault on him occurred, he "may stand his ground and defend himself from attack when he reasonably believes such force is necessary to prevent imminent death or great bodily harm to himself or another." *Bass*, 371 N.C. at 541, 819 S.E.2d at 326. "The reasonableness of his belief is to be determined

by the jury from the facts and circumstances as they appeared to him at the time" he committed the forceful act against his adversary. *See State v. Gladden*, 279 N.C. 566, 572, 184 S.E.2d 249, 253 (1971).

Applying these statutory and case law principles to the present case, defendant's evidence shows that Garris was the aggressor toward defendant from the very beginning of the interaction between the two of them when Garris confronted defendant while defendant was seated outside of the neighbor's home, striking defendant with such force as to knock defendant out of his chair. Without a violent response to Garris, defendant arose from the ground and, with his previously injured broken leg, retreated to his nearby home on foot. Garris followed defendant and, when defendant arrived at his home, Garris once again employed force against defendant by grabbing defendant and throwing him against the door of the residence. Garris then forcibly entered defendant's home as he continued to inflict assaultive punishment upon defendant in light of Garris's expressed belief that defendant had been a "snitch[ed]" to law enforcement concerning Garris's brothers. Defendant held a fearful belief concerning the potential for physical violence that he felt was wreaked upon "snitches" as Garris briefly left defendant's residence, but immediately returned with another individual. During this second uninvited and unlawful entry into defendant's residence by Garris, defendant was pummeled by Garris. After Garris departed from defendant's home and defendant, who was injured, had repositioned himself from the floor back into his wheelchair, defendant observed the third entry of

Garris into defendant's home. Due to the force that Garris had been using and the harm that had been occurring toward defendant in his home through the increasingly violent and unpredictable actions of Garris, when Garris rushed into the residence of defendant on the third occasion, defendant shot Garris.

Viewing the evidence at trial in the light most favorable to defendant in order to determine whether the evidence was competent and sufficient to support the jury instructions on self-defense and the defense of habitation, we conclude that defendant was entitled to both instructions. In assessing the provisions of N.C.G.S. § 14-51.3 governing the right of a person such as defendant to justifiably utilize force against another person such as Garris when and to the extent that the person in defendant's position reasonably believed that the conduct was necessary to defend oneself against another's imminent use of unlawful force, this Court determines that defendant in the instant case presented competent and sufficient evidence to warrant the self-defense instruction. This includes the use of deadly force without a duty to retreat in any place that he had the lawful right to be when he holds a reasonable belief that such force is necessary to prevent imminent death or great bodily harm to himself or herself. Similarly, in reviewing the elements of N.C.G.S. § 14-51.2(b) regarding the presumption of a lawful occupant of a home—such as defendant in his residence—to have held a reasonable fear of imminent death or serious bodily harm to himself or herself when using defensive force that is intended or likely to cause death or serious bodily harm to another person, such as Garris here, if such person against whom the

defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, the lawful occupant's home and the person using the defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred, we conclude that the evidence presented at trial was competent and sufficient to support defendant's requested instruction on the defense of habitation.

The dissenting judge at the Court of Appeals in this case focuses primarily upon defendant's testimony at trial that he fired a warning shot at Garris as rationale for the dissenting judge's view that the trial court correctly declined to instruct the jury on self-defense and the defense of habitation. The dissenting judge deems defendant's act as exceeding the response to Garris's conduct which was reasonably necessary to protect defendant from death or serious bodily harm, thereby precluding a jury instruction on self-defense, while also precluding a jury instruction on the defense of habitation because defendant's testimony at trial about a warning shot rebuts the statutory presumption of "reasonable fear of imminent death or serious bodily harm" when using defensive force in one's home. The dissenting judge relies upon the Court of Appeals opinion in *State v. Ayers*, 261 N.C. App. 220, 819 S.E.2d 407 (2018), *disc. review denied*, 372 N.C. 103, 824 S.E.2d 407 (2019), for the conclusion that the warning shot demonstrates that defendant "did not 'inten[d] to strike the victim with the blow' " so as to preclude defendant from the right to a self-defense instruction. *Coley*, 263 N.C. App. at 260, 822 S.E.2d at 769 (Zachary, J., dissenting)

(alteration in original) (quoting *Ayers*, 261 N.C. App. at 225, 819 S.E.2d at 411). Likewise, the dissenting judge cites the Court of Appeals opinion of *State v. Cook*, 254 N.C. App. 150, 802 S.E.2d 575 (2017), for the premise that the statutory defense of habitation with its presumption of reasonable fear does not apply when a defendant testifies that he fired a warning shot and did not intend to shoot the attacker because such words disprove the presumption that the defendant was in reasonable fear of imminent harm. *Coley*, 263 N.C. App. at 262–63, 822 S.E.2d at 770. Finally, the dissenting judge also submits that defendant did not have a right to a jury instruction on the defense of habitation because Garris was a lawful occupant of defendant's home in light of Garris's occasional residency there, Garris's possession of a key to defendant's residence, and the presence of some of Garris's personal possessions inside of defendant's home. *Id.* at 262–63, 822 S.E.2d at 770–71.

The dissenting judge's perspective ignores the principle that we set out in *Dooley* that although there may be contradictory evidence from the State or discrepancies in the defendant's evidence, nonetheless the trial court must charge the jury on self-defense where there is evidence that the defendant acted in self-defense. Indeed, as expressly noted by the Court of Appeals majority in its decision, when viewing defendant's testimony as true, competent evidence was presented from which a jury could reasonably infer that defendant intended to "strike the blow" when he aimed and fired his gun at Garris. Ultimately, just as the Court of Appeals majority correctly observed that "[p]resuming [that] a conflict in the evidence exists as to

whether Garris had a right to be in the home, it is to be resolved by the jury, properly instructed," *id.* at 257, 822 S.E.2d at 767, it is appropriately within the purview of the jury to resolve any conflicts in the evidence presented at trial and to render verdicts upon being properly instructed by the trial court based upon the evidence which competently and sufficiently supported the submission of such instructions to the jury for collective consideration.

We agree with the majority opinion of the Court of Appeals that the trial court erred by failing to instruct the jury on self-defense and on the defense of habitation. We further agree with the lower appellate court's conclusion that the trial court's failure to properly instruct the jury constituted error that was prejudicial to defendant. Subsection 15A-1443(a) states, in pertinent part, that a defendant is prejudiced by an error when there is a reasonable possibility that had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. N.C.G.S. § 15A-1443(a) (2019); *see also State v. Ramos*, 363 N.C. 352, 355, 678 S.E.2d 224, 227 (2009). In this regard, the Court of Appeals majority astutely observes in its opinion that "[d]efendant was acquitted by the jury on all charges involving an intent to kill," which was a criminal offense element that served as a factor in the trial court's denial of the requested jury instructions at trial. *Coley*, 263 N.C. App. at 258, 822 S.E.2d at 768.

*Conclusion*

Based on the aforementioned reasons, we affirm the decision of the Court of

Appeals that there was sufficient evidence presented at trial to support the submission of defendant's requested instructions to the jury on self-defense and the defense of habitation. We also affirm the determination of the lower appellate court to reverse the convictions of defendant, to vacate the judgments against defendant, and to grant a new trial to defendant with complete self-defense instructions, based upon our determination that there is a reasonable possibility that had the trial court not committed prejudicial error in its presentation of instructions to the jury, a different result would have been reached at the trial.

AFFIRMED.